BIBLE INSTITUTE COLPORTAGE ASS'N. ET AL *v* St. JOSEPH B. & T. CO.

[No. 17,610. Filed December 3, 1947. Rehearing denied January 16, 1948. Transfer denied December 2, 1948.]

594

*Glenn D. Peters, John S. Miller* and *Cassius M. Doty,* all of Hammond, and *Peters & Highland* of counsel, of Hammond, *Taylor, Miller, Busch & Boyden* of counsel, of Chicago, attorneys for appellants.

*Seebirt, Oare, Deahl,* and *Crumpacker, May, Carlisle & Beamer,* all of South Bend, attorneys for appellee.

BOWEN, P. J.—This is an action brought by appellee, St. Joseph Bank and Trust Company, as Administrator with the Will annexed of Ida M. Lovett, deceased, seeking a construction of the residuary clause of her will.

The clause in question provided:

"Eighth. All the rest, residue and remainder of my estate, of whatever kind and wherever situated, of which I may die possesed, I give, devise and bequeath to The Bible Institute Colportage Association of Chicago, incorporated under the laws of the State of Illinois, with its main office at 843-845 North Wells Street, Chicago, to be used in the publication and dissemination of evangelical Christian literature in harmony with its Articles of Incorporation, and I direct my executors, hereinafter named, to turn over to the said Association all stocks, bonds, certificates of deposits and cash, within one year after my decease, or as soon thereafter as possible, and that the receipt of the Association shall be a sufficient discharge of my executors from their obligations under this will. But it is understood and agreed by the said Colportage Association that in receiving the said residue and remainder of my estate, it obligates itself to meet all needful and recreational expenses of my nephew, Godfrey M. Lovett, the only son of my brother Charles, deceased, who is now located at the Shepherd and Enoch Pratt Hospital at Towson, Maryland, as long as he shall live, providing his funds derived from his estate shall at any time be insufficient to meet the said expenses at the said Hospital during any one year, it being understood that the said Association obligates itself only to the extent of the income received from the stocks and bonds that will be turned over to it by my said

executors or from investments of any and all moneys that shall be turned over to it by my executors, year by year, and if the income from the estate of the said Godfrey M. Lovett is sufficient to meet his Hospital expenses, and the said income from my estate is not needed to meet the expenses of my said nephew at the said Hospital in Towson, Maryland, during any current year, then the Association shall use that income in the furthering of its ministry and shall not be further obligated for said expenses. Upon the death of my said nephew, this obligation on the part of the said Colportage Association to meet his expenses, if necessary, out of the income of the residue of my estate, shall cease, and there shall be no further obligation on the part of the Association, and it may then use the entire residue of my estate in the work of the Association, free from all obligations whatsoever."

The parties defendant to the proceedings were The Bible Institute Colportage Association of Chicago and the heirs of Ida M. Lovett who are the appellees herein.

The complaint alleged that Godfrey M. Lovett was a person of unsound mind and that Angela Lovett Patterson is his duly appointed and acting conservatrix under appointment by the Probate Court of Cook County, Illinois.

The complaint further alleged that the heirs claim that The Colportage Association is no longer in existence and was not in existence at the time of the death of Ida M. Lovett, and that there is a failure of an existing legatee, and that such residue descends to the heirs of Ida M. Lovett. It was also alleged that The Moody Bible Institute of Chicago claims that it is identical to The Bible Institute Colportage Association of Chicago and is entitled to the residuary estate under the terms of the will, and that regardless of the merger of the Bible Institute Colportage Associa-

tion with The Moody Bible Institute that the will created a charitable trust which did not lapse.

The appellants filed a cross-complaint which was stricken out on motion of the defendant heirs on the ground that it tendered the same issue as was presented by the parties in their defense and answer.

The appellants filed a motion to stay proceedings until jurisdiction of the person of Godfrey M. Lovett had been acquired, and claimed that since there was no personal service of process nor service upon a guardian appointed by and responsible to the courts of this State that personal jurisdiction of Godfrey M. Lovett was not acquired which was overruled by the court.

Upon a trial of the cause, the court found the issues against the appellants and entered judgment that the legacy to The Bible Institute Colportage Association of Chicago had lapsed and that the residuum of Ida M. Lovett's estate by the statute of descent of the State of Indiana, be and hereby is inherited by her two nieces and one nephew, the appellees herein.

Error assigned for reversal is that the trial court erred in overruling appellants' motion for a new trial, the grounds of which were that the decision of the court is not sustained by sufficient evidence; that the decision of the court is contrary to law; that the court also erred in striking out the cross-complaint filed by appellants; that the court erred in overruling appellants' motion to stay proceedings until jurisdiction of the person of defendant Godfrey M. Lovett had been acquired.

Error is also predicated upon the refusal of the trial court to permit the introduction of certain evidence showing that the activities of The Moody Bible Institute of Chicago and The Bible Institute Colportage Association of Chicago were identical.

The appellants contend that the merger of The Bible Institute Colportage Association and The Moody Bible Institute would not necessarily extinguish the corporate existence of The Colportage Association, thereby lapsing the residuary clause of the will. The Bible Institute Colportage Association and The Moody Bible Institute are both Illinois corporations. By reason of the legal proposition presented by appellants' contention, we must examine the effect of the proceedings merging such corporations. We must be guided in such examination by the Illinois statutes, and the decisions interpreting such statutes, and the provisions of the articles of merger. *Gladding* v. *St. Matthew's Church* (1904), 25 R. I. 628, 57 Atl. 860, 862; *Ex Parte Worchester Nat. Bank* (1929), 279 U. S. 347; *Fletcher's Cyc. of Corps.* Vol. 15, ch. 61, p. 80, § 7079 (Perm. ed.).

The resolution of the merger of The Colportage Association recites that The Moody Bible Institute of Chicago and The Colportage Association were both organized and existing under the provisions of an Act of the State of Illinois providing for corporations not for pecuniary profit, and that it was advisable and to the best interests of said corporations that they merge into a single corporation in accordance with the provisions of an Act of the State of Illinois authorizing such merger approved June 29, 1933, as amended; that The Bible Institute Colportage Association of Chicago should merge with The Moody Bible Institute of Chicago into a single corporation and that the name of such corporation should be The Moody Bible Institute of Chicago. The resolution further set forth the corporate purposes of said new corporation which were:

"The establishment of this corporation is for the purpose of conducting and maintaining a Bible Institute for the education and training of Chris-

tian workers, teachers, ministers, missionaries and musicians who may competently and effectually proclaim the Gospel of Jesus Christ; the operation and maintenance, without profit, of a radio broadcasting station to stimulate men and women to Christian service through the preaching and teaching of the Gospel of Jesus Christ as set forth in the Bible, by spoken messages, song and instrumental music; and the maintenance of such facilities as may be properly used in the publication, distribution and sale of, Christian evangelical literature, any profit from which shall be used in promoting the general objects of the corporation; to acquire and retain for said purposes, real estate, money and personal property, and to do any and all things necessary or reasonable to carry out said corporate purposes."

The resolution of merger of the Moody Bible Institute was similar and contained a statement of the corporate purposes as contained in the Colportage merger.

The Articles of Incorporation of The Bible Institute Colportage Association and all amendments were introduced into evidence. According to these articles, the objects of the corporation were to circulate, distribute, make, publish, buy, sell, and give away books, pamphlets, tracts, singing books, Bibles, testaments, and evangelical religious publications and to use any surplus funds for the association in and about Bible and evangelical work.

The Illinois Statute authorizing the merger or consolidation of two or more corporations not for pecuniary profit under which the merger in the instant case was effected is an Act approved June 29, 1933, Illinois Revised Statutes, 1945, ch. 32, §§ 188 to 188(j)1, pp. 894-895. Section 1 of this Act provides:

"Any two or more societies, corporations or associations of the same or a similar nature, organized under any special or general law of this

State or of any State of these United States pertaining to corporations not for pecuniary profit for the purpose of conducting any kind of business or enterprise for any lawful purpose other than for pecuniary profit, including religious coporations, may merge or consolidate into a single corporation. The corporation formed by the merger or consolidation may take either the name of one of such merging or consolidating corporations . . . or a new name not the same as or similar to that of a corporation then existing under the laws of this State or of a foreign corporation licensed to do business in this State."

Sections 5 and 6 of this Act provide:

"When such merger or consolidation has been effected, the merged or consolidated corporations shall be a single corporation in accordance with the terms and provisions of the resolution so adopted and approved, and shall be subject to all the duties and liabilities and have all the rights, privileges, immunities and powers of a non-profit corporation formed under the provisions of the laws of this State pertaining to the organization of corporations not for pecuniary profit."

"Such single merged or consolidated corporation shall thereupon and thereafter possess all the rights, privileges, immunities, powers and franchises as well of a public as a private nature and all property, real, personal and mixed, and all debt due on whatever account, as well as for subscriptions to membership and all other things in action, of, or belonging to, each of said corporations, and be subject to all the restrictions, liabilities and duties of each of such corporations so merged or consolidated. All property rights, privileges, immunities, powers and franchises and all and every other interest shall thereafter be as effectually the property of the merged or consolidated corporation as they were of the several and respective merging or consolidating corporations. The title to any real estate, whether by deed or otherwise, under the laws of this State, vested in any of such corporations shall not revert or be in any way

impaired by reason of such merger or consolidation."

We are called upon to determine the effect of the merger and consolidation of The Bible Institute Colportage Association of Chicago with The Moody Bible Institute of Chicago upon the legacy in question.

We feel that the case of *Chicago Title and Trust Company* v. *Zinser* (1914), 264 Ill. 31, 105 N. E. 718, is very helpful in arriving at a determination in the instant case. In this case, The Supreme Court of Illinois considered the effect of a consolidation of two corporations upon powers granted by a will naming one of the original corporations as executor to administer a trust estate. In this case, one Etta Nelson by her will named the Real Estate Title & Trust Company as executor and trustee. After the making of the will and before the death of Etta Nelson the Real Estate Title and Trust Company and the Chicago Title & Trust Company were consolidated into one corporation under the name of the Chicago Title & Trust Company, the new corporation created by the consolidation. The court held that notwithstanding the general rule that a trustee cannot delegate his authority to another that the new corporaion which was formed upon consolidation could continue to act as trustee and executor by virtue of the provisions of the will naming one of the original constituent corporations to the consolidation as executor, and that such corporation had the power to execute the trust. The court in its opinion stated the general rule that a trustee cannot delegate his authority to another and says further:

"That general rule rests upon the ground that the selection of a trustee implies personal confi-

dence in his discretion and judgment. If a power is given to an executor trustee which is not ministerial or given for the purpose of executing a declared trust which the court can enforce but which involves the exercise of discretion and judgment, the power cannot be delegated or transferred to another, either by a trustee or court. The rule, however, cannot be applied to the case of a corporation, because the element of trust in a judgment and discretion of an individual is entirely wanting. A corporation is without personality, and if it is selected as trustee or executor there can be no reliance on individual discretion or even upon the continuance of the same administration. Etta Nelson, in naming the Real Estate Title and Trust Company as executor and trustee, knew that its directors, officers, and stockholders might change from time to time, and that the statute authorized a change of name or place of business, enlargement or change of the object for which the corporation was formed . . . and the consolidation of the corporation with any other corporations then existing or that might thereafter be organized. She therefore contemplated that these changes might occur, and that the Real Estate Title and Trust Company might be consolidated with some other corporation such as the Chicago Title and Trust Company and that it would thereby cease to exist and become a component part of a new corporation. A consolidation took place and a new corporation was created from the original corporations with an enlarged stock and unimpaired franchises. The appellee was entitled (i.e., the new corporation) to execute the trust and the chancellor did not err in overruling the demurrer." (Our parenthesis)

In *In Re Doane's Estate* (1925), 208 N. Y. S. 320, a legacy of $5,000 was provided for one Hahnemann Hospital in the City of New York, which hospital prior to the death of the testatrix had been merged with the Laura Franklin Free Hospital and these corporations consolidated into a single corporation known as the Fifth Avenue Hospital of the City of New York, and the new corporation continued the general policy

and methods of treatment of the Hahnemann Hospital. The court held that the legacy was payable to the new consolidated corporation, the Fifth Avenue Hospital in the City of New York.

Since the case of *Chicago Title and Trust Co.* v. *Zinser, supra,* establishes the authority for the execution of a trust by the new corporation created by a consolidation of two original constituent corporations where the will creating such trust named one of the constituent corporations as trustee, we must determine the legal proposition whether a trust was created by Item 8 of decedent's will.

It is well established that no formality of language nor special technical words are necessary to establish a charitable trust. Courts will look through form to the substance. *Todd* v. *Citizens Gas Co. of Indianapolis* (1931), 46 F 2d 855; *Herron* v. *Stanton, Admr.* (1922), 79 Ind. App. 683, 147 N. E. 305; *Crawfordsville Trust Co.* v. *Elston Bank & Trust Co.* (1940), 216 Ind. 596, 25 N. E. 2d 626.

A broad definition of a charitable trust is also set forth in the Restatement of the Law of Trusts, § 348, p. 1095 as "a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose."

The purposes of the bequest, when we consider it in its entirety, are the *publication* and *dissemination* of evangelical Christian literature in harmony with the Articles of Incorporation of the Colportage Association. The Articles of Incorporation of the Colportage Association were merely the standard which was to guide the trustee in the publication and

dissemination of such evangelical Christian literature. There was nothing of a private nature to such bequest, nor was any discretion vested in the trustee to use the funds of such bequest for any purposes other than charitable uses. The articles of incorporation of the Colportage Association provide that its objects were to circulate, distribute, make, publish, buy, sell, and give away books, pamphlets, tracts, singing books, Bibles, testaments, and evangelical religious publications, and to use any surplus funds of the association in and about Bible and evangelical work. The last sentence of such bequest providing that upon the death of testatrix's nephew that any further obligation should cease to meet his expenses, and that such association could thereupon use the entire residue of such trust estate in the work of such association free from all obligations whatsoever, must be considered in connection with the purposes set forth in the first part of said bequest to use such funds for the publication and dissemination of evangelical Christian literature. The reference to the use of such funds free from obligations must be held to refer to freedom from any obligations to decedent's nephew.

A trust for the publication and dissemination of evangelical Christian literature without reference to any particular sect is charitable. A trust to promote a particular religious belief which is not illegal or immoral is charitable, although the doctrine is advocated by only a single sect or small portion of the total population. 2 *Bogert, Trusts,* § 375, pp. 1175-1181; 10 *Am. Jur.* 625, § 56; *American Law Institute, Restatement of the Law of Trusts,* § 371, pp. 1149-1150.

A bequest to aid in the distribution of Bibles and other religious literature and to aid in the dissemina-

tion of the Gospel at home or abroad are generally recognized as charitable uses. *Kelly* v. *Nichols* (1891), 17 R. I. 306, 21 Atl. 906; *In Re Smith's Estate* (1933), 144 Ore. 561, 25 P. 2d 924; *Rhoades et al.* v. *Yater et al.* (1921), 27 N. M. 489, 202 Pac. 698; *Hitchcock* v. *Bd. of Home Missions* (1913), 259 Ill. 288, 102 N. E. 741.

Since the provisions of decedent's will provided for a bequest which was clearly for purposes that are charitable within the legal definition of such term, in considering the same we must recognize that the settled law requires that the provisions of a will purporting to establish a charitable trust are to be given a liberal construction, and that such legacies for the uses of charity will not be declared void, if they can by any possibility consistent with the law be held valid. *Herron* v. *Stanton, Admr., supra; Crawfordsville Trust Co.* v. *Elston Bank & Trust Co., supra; Quinn* v. *Peoples Trust & Savings Co.* (1945), 223 Ind. 317, 60 N. E. 2d 281.

The personality of the trustee was not the vital factor in the charitable trust created by the testatrix. The testatrix in naming in effect, the Colportage Association as trustee, as in the case of *Chicago Title & Trust Co.* v. *Zinser, supra,* knew that its directors, officers, and stockholders might change from time to time, and that there might be a consolidation of such coporation with some other corporation then existing or that might thereafter be organized. There is evidence in the record that she had knowledge of such consolidation and that the Colportage activities were being carried on under the name of The Moody Bible Institute. Under such circumstances the expressed intention and the expressed charitable purposes of the testatrix can be carried out by the new

corporation, The Moody Bible Institute. The Moody Bible Institute is empowered and entitled to execute the trust under the terms of decedent's will.

The appellee contends that the bequest in question was a direct and outright gift to the Colportage Association as was the bequest in the case of *Ebenezer's Old People's Home* v. *South Bend Old People's Home* (1943), 113 Ind. App. 382, 48 N. E. 2d 851. In the above case, this court held there was no condition attached to the use of the funds, and that it was an outright gift to the named institution. In the case at bar the testatrix has specifically set forth the express charitable purposes, the carrying out of which a court of equity could enforce upon the trustee. The beneficiaries of the trust in the instant case are the persons, who shall receive, read, and enjoy the benefits of the publication and dissemination of such Christian evangelical literature. In the Ebenezer case the funds were granted as a perpetual fund for the institution to be used as the officers of said institution might see fit for the good of their institution. This is not the situation in the case at bar.

Also, the facts of this case are clearly distinguishable from the case of *Trustees of the Presbyterian Church of LaPorte, Ind.* v. *Katsianis et al* (1922), 78 Ind. App. 406, 134 N. E. 684 decided by this court and relied upon by appellee. In this case, a bequest was made to the trustees of a church which had passed out of existence at the death of the testator for the use and benefit of such church, one-half of the trust fund to be used for the pastor of such church and the other half to be applied to the purchase and payment of rental of comfortable pews for the use and benefit of the poor people who may wish to attend such church. Clearly, there could be no pastor, nor

any attendants of a church which had passed out of existence. In the case at bar, the beneficiaries of the publication and dissemination of evangelical Christian literature would continue to exist indefinitely. The reference to the Articles of Incorporation and The Colportage Association merely establish a standard and fix the nature of such literature which should be distributed.

In the construction of wills, the pole star for our guidance is the intention of the testator. To reach a different result than that which we have reached in this case would clearly thwart the intention of the testatrix, as it appears in the legal effect of the words of the will and her expressed purposes therein.

We hold, therefore, that in the instant case there was a valid charitable trust created by clause eight of the will of the decedent. The Moody Bible Institute of Chicago has the power to execute such trust. The trial court erred in overruling appellants' motion for a new trial.

The judgment is reversed with directions to the trial court to sustain appellants' motion for a new trial, and for proceedings not inconsistent herewith.

## CONCURRING OPINION.

ROYSE, J.—I agree with the majority opinion that the judgment should be reversed. However, I feel their opinion goes farther than is necessary to reach such conclusion, and in doing so contravenes fundamental principles of law applicable to bequests of the character here construed.

I believe this case could and should be decided on the authority of the case of *Chicago Title and Trust*

*Company* v. *Zinser* (1914), 264 Ill. 31, 105 N. E. 718, cited and quoted from in the majority opinion. Applying the reasoning of that case to the question here considered, it is apparent Ida M. Lovett, in making the bequest to the Bible Institute Colportage Association, knew that its directors, officers and stockholders might change from time to time, and that the Illinois statute authorized a change of name or place of business, enlargement or change of the object for which the Corporation was formed . . . and the consolidation of the corporation with any other corporation then existing or that might thereafter be organized. She therefore contemplated that these changes might occur, and that the Bible Institute Colportage Association might be consolidated with some other corporation such as the Moody Bible Institute of Chicago, and that it would thereby cease to exist and become a component part of a new corporation. This is exactly what occurred, and Ida M. Lovett knew of the consolidation before her death. If, as held by the Supreme Court of Illinois in the last cited case, the new corporation was entitled to execute the trust in that case, I can see no reason why in this case under the Illinois statute the new corporation should not receive the bequest.

I cannot agree that the bequest herein creates a charitable trust. It is, in my opinion, a charitable gift. In Bogert, *Trusts and Trustees*, Vol. 2, p. 1031, § 324, it is stated, where the gift is outright and absolute no trust is involved.

"A legacy absolute in terms, but suggesting a particular use, does not create either a condition or a trust. 11 C. J. 351, § 68.

In 14 C. J. S. 498, § 45, it is stated:

"generally speaking, a provision for a direct gift to charity or to a charitable organization is not

a trust in the eyes of the law; it is a charitable donation. Such a provision is not rendered the less absolute or converted into a trust because the donor expresses a desire, request, or hope for, or suggests, a particular use or application, *or because the provision specifies that the donation shall be employed for one or more of the purposes for which the charitable organization benefiting thereby was formed,* or even that the bequest shall be in trust for such a purpose." (My emphasis.)

In 10 Am. Jur. 610, § 37, the rule is stated in these words:

"Gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense, do not offend against the statutes of perpetuities, and are not to be judged by any of the well-known rules pertaining to the law of trusts as applied to private individuals."

The case of *Ebenezer's Old People's Home, etc.*, v. *South Bend Old People's Home, Inc. et al* (1943), 113 Ind. App. 382, 48 N. E. 2d 851, is in accord with these authorities and, in my opinion, directly controlling in this case. In that case the testator's will provided, in part, as follows:

"In the event there is an institution in the City of South Bend at the time of my death or within two years after the time of my death, which has for its purpose of its existence the maintenance of a home for old people irrespective of their religious beliefs upon at least a partial charitable basis, then I desire and direct my said executor to turn all the rest and residue of the property of which I may die seized to said institution."

Judge Crumpacker said, in reference to this provision:

"It is apparent to us that in the instant case the testator intended to give the residue of his estate

to some institution in South Bend which had for its purpose the maintenance of a home for old people to be used by such institution in the carrying out of *its* purposes and not in trust for another. The charity in which such an institution was engaged appealed to the testator and he gave to it the residue of his estate to aid in the carrying out of its purposes without other restriction or limitation. Such a bequest has none of the characteristics of a trust and amounts to nothing more than a gift to a charitable institution in whose purposes and objects he was sympathetic."

I have found no authority to the contrary.

In this case the first sentence of the questioned clause of the will provides as follows:

"All the rest, residue and remainder of my estate, of whatever kind and wherever situated, of which I may die possessed, *I give, devise and bequeath to The Bible Institute Colportage Association of Chicago*, incorporated under the laws of the State of Illinois, with its main office at 843-845 North Wells Street, Chicago, to be used in the publication and dissemination of evangelical Christian literature in harmony with its Articles of Incorporation, and I direct my executors, hereinafter named, to turn over to the said Association all stocks, bonds, certificates of deposits and cash, within one year after my decease, or as soon thereafter as possible, and that the receipt of the Association shall be sufficient discharge of my executors from their obligations under this will." (My emphasis)

And then the last sentence of this clause concludes with this phrase:

"and it may then use the entire residue of my estate *in the work of the Association, free from all obligations whatsoever.*" (My emphasis)

It seems to me it would be difficult to make a definite and absolute gift in more specific language.

NOTE.—Reported in 75 N. E. 2d 666.