**ST. MARY'S MEDICAL CENTER, INC., Appellant,**

v.

**Vincent McCARTHY, Appellee.**

**No. 82A01–0411–CV–462.**

Court of Appeals of Indiana.

June 29, 2005.

Rehearing Denied Sept. 15, 2005.

N. Kent Smith, Hall Render Killian Heath and Layman, PSC, Indianapolis, for Appellant.

Charles L. Berger, Sheila M. Corcoran, Mark W. Rietman, Jennifer L. Ulrich–Keppler, Berger and Berger, Evansville, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

St. Mary's Medical Center, Inc. ("St. Mary's") appeals the trial court's entry of declaratory judgment and a permanent injunction in favor of Vincent McCarthy. We reverse.

### Issue

The sole restated issue we consider is whether the trial court properly concluded that St. Mary's cannot demolish a chapel on its campus constructed in the 1950's with funds provided by the estate of one of McCarthy's relatives.

### Facts

In 1950, Cornelia G. Haney executed her last will and testament. Ms. Haney was a member of the prominent Reitz family of southwest Indiana. The will provided in part as follows, after listing several other dispositions:

> ITEM SEVEN: I hereby give, bequeath and devise the entire rest, residue and remainder of my entire estate, both real and personal, the real estate in fee simple and the personal property absolutely, in the following proportions to the following named beneficiaries hereof, to-wit:
>
> \* \* \* \* \*
>
> E. Thirty-two (32) per cent thereof to THE CITIZENS NATIONAL BANK OF EVANSVILLE, of Evansville, Indiana, in trust, nevertheless, for the

R. Thomas Bodkin, Bamberger Foreman Oswald and Hahn, LLP, Evansville,

use and benefit of ST. MARY'S HOSPITAL, of Evansville, Indiana, upon and subject to the following uses and trusts, to-wit:

* * * * *

3. The corpus and income of said trust estate shall be used by said trustee for the purpose of creating at or in connection with said ST. MARY'S HOSPITAL, of Evansville, Indiana, a HANEY MEMORIAL, the exact nature and form of which shall be determined by said committee composed of DANIEL F. McCARTHY, PATRICK J. CORCORAN and WILBUR C. CLIPPINGER, or the successor member or members of said committee, and in furtherance of such purpose said trustee shall expend the corpus and income of the trust estate for the use and benefit of said hospital or transfer the same or any part thereof to said hospital, at any time or from time to time, upon such terms and conditions as the members or a majority of the members of said committee in their sole discretion shall determine and direct the trustee.

Appellant's App. pp. 242–44.

Haney died on July 21, 1951. On March 30, 1954, the trust committee decided to use the trust funds to build a chapel at St. Mary's. Construction of the chapel, financed by over $250,000 from Haney's estate,[1] was completed in early 1956. On February 29, 1956, the chapel was consecrated in Catholic fashion and dedicated as the Chapel of Mary, Queen, with a plaque noting it was a memorial to Haney.

In 2003, St. Mary's determined that it would be necessary to expand its facilities, and that such expansion would require demolition of the chapel funded by Haney's estate. In 2004, St. Mary's took steps to deconsecrate and dismantle the chapel, including moving the Eucharist to another chapel at the hospital and removing the stained glass windows. As evidenced by local newspaper coverage that is included in the Appellee's Appendix, the decision to demolish the Chapel of Mary, Queen, was unacceptable to many persons in the Evansville community.

On July 30, 2004, McCarthy filed his complaint for declaratory judgment and a permanent injunction to prevent St. Mary's from demolishing the chapel. McCarthy is the grandson of Daniel McCarthy, one of the trust committee members who voted to use the funds from Haney's estate to build the chapel. He is also a distant relative of Haney; he is her first cousin, three times removed, and was born in 1965, or fourteen years after her death. On September 28, 2004, the trial court entered its judgment, with accompanying findings and conclusions, providing that St. Mary's "is permanently enjoined from destroying the Chapel of Mary, Queen" and requiring St. Mary's to restore the chapel to its original condition. Appellant's App. p. 18. St. Mary's now appeals.

**Analysis**

McCarthy argued before the trial court and argues on appeal that Haney's bequest to St. Mary's for the creation of a Haney Memorial essentially was intended to create a charitable trust, with St. Mary's now trustee for the donated assets that were converted into the Chapel of Mary, Queen. He essentially contends that the first trust created by Haney's will for the benefit of St. Mary's morphed into a second trust with St. Mary's as trustee when it received the funds for construction of the chapel. St. Mary's counters first that McCarthy, who is separated from Haney by seven degrees of consanguinity, lacked standing

1. It is estimated that this bequest today would be worth approximately $1.8 million.

to initiate this action, and second that there is no current charitable trust in this case.

■ The trial court here entered findings of fact and conclusions thereon. "In such a case, we apply the following two-tier standard of review: whether the evidence supports the findings, and whether the findings support the judgment." *Olcott Intern. & Co., Inc. v. Micro Data Base Systems, Inc.*, 793 N.E.2d 1063, 1071 (Ind. Ct.App.2003), *trans. denied.* "Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them." *Id.* Appellate courts, however, review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *B P Amoco Corp. v. Szymanski*, 808 N.E.2d 683, 687 (Ind.Ct.App.2004), *trans. denied.* In this regard, we note that the question of standing generally is one of law, not fact. *See Embry v. O'Bannon*, 798 N.E.2d 157, 159 (Ind.2003). Likewise, the interpretation, construction, or legal effect of a will is a question to be determined by courts as a matter of law. *East v. Estate of East*, 785 N.E.2d 597, 601 (Ind.Ct.App.2003). Here, the essential facts underlying this case are undisputed. The dispute arises over the legal consequences of those facts with respect to McCarthy's standing and the legal effect of Haney's testamentary devise to St. Mary's. We owe no deference to the trial court's conclusions on those issues.

■ Turning first to McCarthy's standing, the general rule is that only those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct will be found to have standing. *State ex rel. Cittadine v. Indiana Dep't of Transp.*, 790 N.E.2d 978, 979 (Ind.2003). "Absent this showing, complainants may not invoke the jurisdiction of the court." *Id.* A plaintiff must have more than a general interest common to all members of the public. *Id.*

This court has held,

The law is well settled that inasmuch as the enforcement of public charities are matters of public interest the attorney general appearing as a public officer is the proper party to maintain litigation involving questions of public charitable trusts. And an individual member of the public has no right as such to maintain a suit of such character.

*Boice v. Mallers*, 121 Ind.App. 210, 216–17, 96 N.E.2d 342, 344–45 (1950), *trans. denied.* In the present case, the Attorney General was notified of McCarthy's lawsuit but declined to intervene. McCarthy also concedes that he is not an heir-at-law of Haney. Nevertheless, in order to address the merits of this case we will assume without deciding that McCarthy, a person with ties to the Haney family whose grandfather voted to use the funds from Haney's estate to build the chapel, had standing to bring this action.

■ Resolution of this case turns on construction of Haney's will. As noted, the interpretation, construction, and legal effect of a will are questions of law. *East*, 785 N.E.2d at 601. "The plain and unambiguous purpose and intention of the testator must be determined only from the terms of the instrument itself considering the same without reference to the whole instrument and without taking individual clauses out of context." *Id.* "The 'four-corners' rule has long been the law in Indiana and requires that, as to any matter expressly covered by a written instrument, the provisions therein, if unambiguous, determine the terms of the instrument." *Id.*

 McCarthy insists that St. Mary's holds the Chapel of Mary, Queen, as trustee for the benefit of those whose use it, such as medical personnel and visitors at the hospital. We note the difference between an absolute devise or gift and one in trust to a charitable institution.[2] "In the former, the property becomes an asset of the corporation to be used in such manner as the corporation deemed best, while in the latter, the property is held by the corporation, not as its own, but in the capacity as a trustee, or as an instrumentality of the settlor in carrying out the directions." *Stockton v. Northwestern Branch of Women's Foreign Missionary Soc'y of Methodist Episcopal Church,* 127 Ind.App. 193, 201, 133 N.E.2d 875, 878–79 (1956). Whether the language of a will or other document was intended to create a charitable trust, binding on the recipient, has been litigated in a number of cases, here and in other jurisdictions, over the course of many years. One commentator has stated generally:

> The court will examine carefully all the clauses of the instrument and the situation of the parties in order to decide whether the phrases used were intended to be binding upon the donee and to make him trustee for charity, or whether he was to be an absolute owner with only moral obligations by reason of the suggestions or requests from the donor as to the use of the property given.

George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 324, pp. 376–77 (1992). "In determining the question of the testator's intention, the generally accepted rules of construction must apply and it will be presumed that he used precatory words in their ordinary and usual sense unless there is something to show that he intended that they be given a different meaning." *Lewis v. Atkins,* 122 Ind.App. 618, 623, 105 N.E.2d 183, 185 (1952). "[T]he mere statement in a will of the purpose for which the subject property is to be used does not create a trust." *Ebenezer's Old People's Home of Evangelical Ass'n of Ebenezer, N.Y. v. South Bend Old People's Home,* 113 Ind.App. 382, 391, 48 N.E.2d 851, 854 (1943) (holding that language in will devising property to "an institution in the City of South Bend ... which has for its purpose of its existence the maintenance of a home for old people irrespective of their religious beliefs upon at least a partial charitable basis" did not create a charitable trust, and devisee was entitled to retain property even though it was unable to operate said institution).

 It has also been noted as a general proposition that charitable trusts are favored by the law, "and the most liberal rules of construction will be employed to sustain and uphold every attempt of a person to donate his property to a charitable use.... The charitable character of the trust being made apparent, all doubts are to be resolved in its favor."

---

**2.** We reject St. Mary's assertion that Haney's devise to St. Mary's, whether construed as a gift or a trust, was not a charitable one because it was intended to create a memorial in her family's name. It is well-settled that a gift does not lose its charitable character simply because the donor also wants the gift to be recognized as a personal or family memorial. *See Scobey v. Beckman,* 111 Ind.App. 574, 580–81, 41 N.E.2d 847, 850 (1942) ("It is our opinion, therefore, that a bequest for the support of a minister, or for the payment of a minister's salary, or the furnishing of a house in which a minister may live, should all be recognized as gifts for charitable uses. The fact that the testatrix also desired to perpetuate by this gift the memory of her deceased son, does not render this devise less charitable."). Here, Haney clearly intended to make a charitable gift to St. Mary's, which could be considered either a medical or religious institution, and the chapel clearly is a religious building.

*Hays v. Harmon*, 809 N.E.2d 460, 467 (Ind.Ct.App.2004), *trans. denied.* In *Hays*, however, there was no question of whether the decedent intended to create a charitable trust by his will. The will expressly referenced the creation of a trust. The issue in *Hays* was whether, given the clear intention to create a trust, the terms of the trust were sufficiently definite to make it valid. *Id.* at 469. Here, we must address the initial question: whether Haney intended to create a perpetual charitable trust after her assets were transferred to St. Mary's. There is also no question here that Haney intended to make a charitable gift of some kind to St. Mary's; the question is what form the gift took. That we should be liberal in construing testamentary charitable gifts does not mean that we may create a charitable trust out of whole cloth.

Both McCarthy and the trial court, in concluding that Haney devised her property to St. Mary's in the form of a charitable trust, have relied upon *Bible Institute Colportage Ass'n v. St. Joseph Bank & Trust Co.*, 118 Ind.App. 592, 75 N.E.2d 666 (1947). There, two judges of this court concluded that a devise to the Bible Institute Colportage Association of Chicago "to be used in the publication and dissemination of evangelical Christian literature in harmony with its Articles of Incorporation" created a charitable trust that was for the benefit of those who might receive the literature and was binding on the Association's successor as trustee of the bequeathed assets. *Id.* at 606–07, 75 N.E.2d at 672. Judge Royse wrote an opinion concurring in result only, pointing out that the majority's conclusion seemed to conflict with the established rule that a mere statement in a will of an intended purpose for a devise to a charity does not convert the gift into a charitable trust. *Id.* at 608–10, 75 N.E.2d at 673 (Royse, J., concurring

in result) (citing *Ebenezer*, 113 Ind.App. at 391, 48 N.E.2d at 854).

Another case in Indiana, besides *Ebenezer*, that reached the conclusion that a devise in a will was an outright gift, and not a charitable trust, was *Stockton.* There, a will devised assets to the Methodist Church "to the Northwestern Branch of the Women's Foreign Missionary Society to be used for China, India and Africa ...." *Stockton*, 127 Ind.App. at 198, 133 N.E.2d at 877. This court held this devise was "a gift absolute without restrictions as to use" and did not create a charitable trust. *Id.* at 201, 133 N.E.2d at 879. In another case from Ohio, a will devised a house to a church "to be used as a parsonage." *First Presbyterian Church of Salem v. Tarr*, 63 Ohio App. 286, 17 O.O. 57, 26 N.E.2d 597, 597 (1939). The Ohio Court of Appeals held that this language did not devise the home in trust to the church for charitable purposes, and the church received a fee simple title to the house and could sell it rather than using it as a parsonage. *Id.* at 599.

We conclude the *Colportage* case, even if we were to assume it was correctly decided, does not control the outcome here. In the *Colportage* case, evidently the bequeathed funds had not been used for their stated purpose and funds remained for that use, and could continue being used in that way indefinitely or until the funds ran out. Here, to the extent there was a stated purpose for the funds in this case—i.e. for the creation of a Haney Memorial—that purpose was met when the chapel was constructed and a plaque memorializing Haney was placed there. Additionally, the general rule is that the mere statement of the purpose for a charitable devise does not transform it into a charitable trust. *See, e.g.*, 14 C.J.S. *Charities* § 31 (1991). Beyond that, Haney's will says nothing as to how long the memorial had to exist in

order for the devise to be valid, or what would happen should St. Mary's no longer want the chapel before the end of its useful life. Additionally, to the extent McCarthy states in his brief, and the trial court found, that the bequest to St. Mary's was "for the construction *and maintenance* of the Chapel of Mary, Queen," the record does not support such an assertion. Appellee's Br. p. 18 (emphasis added). Haney's will only references the creation of a memorial, not its maintenance, and neither the will nor any extraneous document indicates that the bequest was also intended to provide for its indefinite maintenance.

Other factors also lead us to conclude that St. Mary's did not receive the funds for construction of the chapel as trustee of a charitable trust. Here, Haney's will, which governed the disposition of a sizeable estate, was expertly drafted. The drafter clearly knew how to provide for the creation of a trust. Item 7(E) of the will did in fact establish a trust, expressly naming Citizen's National Bank as trustee and St. Mary's as beneficiary and appointing a trust committee who would decide how to distribute the designated portion of Haney's estate to St. Mary's. The will does not contain any language suggesting that whatever funds were distributed to St. Mary's would form the corpus of a second trust, with St. Mary's as trustee and something or someone else as beneficiaries. The fact that a will reveals the drafter clearly knew how to create a trust in one part of the document tends to demonstrate the testator did not intend elsewhere to create a trust where it was not clearly expressed. *See Lewis*, 122 Ind.App. at 625–26, 105 N.E.2d at 186–87.

Haney's will also expressly states that the corpus and income of the trust created for the benefit of St. Mary's should be used for creation of the Haney Memorial. It is axiomatic that transferring title and the entire equitable interest in property to one person as sole beneficiary and sole trustee destroys the existing trust. *See, e.g.,* Ind.Code § 30–4–2–8; Restatement (Third) of Trusts, § 69 (2003). Thus, the trust created by Haney's will clearly was terminated when St. Mary's, that trust's sole named beneficiary, also received the entire corpus of the trust for the creation of the Chapel of Mary, Queen.

We also observe that there is no indication of any second trust document drafted by the trust committee named in Haney's will outlining that St. Mary's was receiving the funds as trustee for the benefit of something or someone else, although the will gave the committee the power to limit distribution of funds "upon such terms and conditions as the members or a majority of the members of said committee in their sole discretion shall determine . . . ." App. p. 244. The trust committee, evidently, could have expressly provided that it was directing the funds from Haney's estate to St. Mary's to be held in trust, but it did not do so.

Even if Haney's will did not create a charitable trust with St. Mary's as trustee of the funds she bequeathed to it, McCarthy's argument also essentially amounts, in the alternative, to a claim that the bequest/gift was subject to a condition subsequent. That is, he seems to contend that the devise is revocable should St. Mary's want to destroy the chapel at any time before it collapses of its own accord after an indeterminate period of use. "[A]lthough no definite or particular form of expression is absolutely essential to the creation of a condition subsequent, it must be manifest from the terms of the will that the devise or bequest was made on condition and the absence of the words usually used for such purpose is significant." *Ebenezer*, 113 Ind.App. at 390, 48 N.E.2d at 854. Conditions subsequent are not fa-

vored in law and always receive a strict construction. *Id.* A condition subsequent will not be implied from a mere declaration in the deed that the grant or devise is made for a special purpose. *Id.*

The clear majority rule is "that nothing short of express provisions for forfeiture and either a reverter, a gift over or a right to retake the property in the donor or his heirs would enable a donor to effectively impose a condition subsequent." Bogert, § 324 p. 392. An application of this rule is apparent in *Herron v. Stanton,* 79 Ind. App. 683, 147 N.E. 305 (1920). There, a decedent's will devised assets for the creation of an art gallery and school in Indianapolis, upon condition that the gallery and/or school be perpetually named for the decedent, John Herron. In the event the gallery and/or school no longer wanted to use Herron's name, the will provided that it would be divested of the assets and such would be distributed to other charitable institutions in Indianapolis. This court held that the devise was a valid charitable gift with a valid condition subsequent or conditional limitation upon the gift. 79 Ind.App. at 695–96, 147 N.E. at 308.[3]

Here, Haney's will contains nothing to indicate the required duration of the Haney Memorial, in contrast to John Herron's will expressly stating that the art school created by his assets should be named for him in perpetuity. Haney's will also contains no reverter language to indicate what should happen to the chapel, or the funds used to build it, if St. Mary's no longer wanted the chapel on its premises, again in contrast to Herron's will. The trust committee also placed no minimum time limit for the existence of the chapel or imposed other restrictions on the donation to St. Mary's. It has been said elsewhere "that when the language of an instrument does not clearly indicate the grantor's intention that the property is to revert to him in the event it is diverted from the declared use, the instrument does not operate as a restraint upon alienation of the property, but merely expresses the grantor's confidence that the grantee will use the property so far as may be reasonable and practicable to effect the purpose of the grant." *Gray v. Harriet Lane Home for Invalid Children,* 192 Md. 251, 64 A.2d 102, 110 (1949); *see also Tarr,* 26 N.E.2d at 602 (holding that devise of house to church for use "as a parsonage" not only did not create charitable trust, but also was not a gift subject to a condition subsequent where will contained no reverter language).

Here, given the disfavor of conditions subsequent and the absence of clear reverter language or the required length of any Haney Memorial created by Haney's estate, the most that can be said of her devise to St. Mary's through her trust committee was that she and the committee expressed confidence in St. Mary's that it would "use the property so far as may be reasonable and practicable to effect the purpose of the grant." *Gray,* 64 A.2d at 110. Indeed, the Chapel of Mary, Queen apparently was an integral part of St. Mary's for nearly fifty years, until such time as the hospital's governance decided that it was no longer practicable for the chapel to remain and, in fact, was an impediment to expansion of the hospital. We will not second-guess the reasonableness of St. Mary's determination on this point. We also note that although charitable gifts should be encouraged so far as possible, charities themselves should not be bound to one particular use of bequeathed property for multiple generations unless they

---

**3.** The art school of Indiana University–Purdue University (Indianapolis) still bears John Herron's name, 110 years after it was established. *See* http://www.herron. iupui.edu/.

are on clear notice that such is a requirement of the bequest.[4]

In any event, there are Indiana cases suggesting that St. Mary's use of the chapel for nearly fifty years constituted substantial compliance with any charitable trust or condition subsequent imposed by Haney's will. For example, in *Higbee v. Rodeman*, 129 Ind. 244, 28 N.E. 442 (1891), the court considered the effect of a donation of real estate to a township with the condition that it be used for school purposes. The opinion holds that even if this represented a valid condition subsequent, which the court doubted, the township substantially complied with the condition by using the property for school purposes for thirty years and that it could then sell the property. *Id.* at 247, 28 N.E. at 443. A similar case is *General Convention of New Church in U.S. v. Smith*, 52 Ind.App. 136, 100 N.E. 384 (1913). There, the decedent bequeathed $2,000 and real estate to his brother, which pursuant to the will the brother promised to use to build a library and hall for the benefit of a church organization. Apparently, the brother died twenty years after the library and hall were built and his heirs sought to recover the property over the objections of the church organization. This court first expressed skepticism that the brother was intended to hold the property in trust for the church organization. We went on to hold that even if there had been a trust, "the purposes of the bequest were fully carried out by the erection of this building of

which plaintiffs had the use and benefit for nearly 20 years, and it does not appear that they are still entitled to its use and benefit. In other words, it does not appear that the trust, if any was created, has not been fully terminated." *Id.* at 138, 100 N.E. at 385.

In sum, in looking at the four corners of Haney's will there is nothing expressing an intent that St. Mary's was to hold any assets bequeathed to it as a charitable trust. There also is nothing in the will indicating the existence of a valid condition subsequent upon the bequest. There is no indication the trust committee created by Haney's will imposed any such condition or created a second trust with St. Mary's as trustee. Finally, even if there was a charitable trust or valid condition subsequent, St. Mary's use of the chapel for nearly fifty years represents substantial compliance with any such trust or condition.

## Conclusion

The trial court erred as a matter of law in concluding that St. Mary's cannot dismantle the Chapel of Mary, Queen. Haney's will neither created a charitable trust with St. Mary's as trustee of the devised assets, nor gave property to St. Mary's as a gift with a condition subsequent. The trust committee also imposed no restrictions on St. Mary's use of the chapel built with funds from Haney's estate, except for having to indicate that it was a memorial to Haney in accordance with her will. We reverse the declaratory judgment and permanent injunction against St. Mary's and

---

4. There was evidence presented here that the Chapel of Mary, Queen could stand for another fifty to seventy-five years, if not longer. McCarthy essentially asserts that St. Mary's must allow the chapel to stand for at least that long; the wording of the trial court's order also would seem to require St. Mary's to do nothing that might hasten the chapel's demise and that it would have to wait until the chapel crumbled of its own accord before it could put the property on which it stands to another use. We decline to so hold in the absence of clear evidence that St. Mary's knew it was irrevocably tying up a substantial piece of its grounds for at least 100 to 125 years when it agreed to use the funds from Haney's estate to build the chapel.

direct that judgment be entered in favor of St. Mary's.

Reversed.

KIRSCH, C.J., and BAKER, J., concur.