ATTORNEYS FOR APPELLANT

GREGORY F. ZOELLER
Attorney General of Indiana

THOMAS M. FISHER
Solicitor General of Indiana

JEFFREY R. COX
HEATHER L. HAGAN
Deputy Attorneys General
Indianapolis, Indiana

PATRICK L. BAUDE
Special Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR INDIANA GAMING
COMMISSION

NORMAN T. FUNK
RORI L. GOLDMAN
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES EAST CHICAGO
SECOND CENTURY, INC., MICHAEL A.
PANNOS AND THOMAS S. CAPPAS

J. LEE MCNEELY
BRADY J. RIFE
Shelbyville, Indiana

MAGGIE SMITH
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE CITY OF EAST
CHICAGO, INDIANA

BRUCE A. KOTZAN
JAMES A. KNAUER
WILLIAM BOCK, III
STEVEN E. RUNYAN
Indianapolis, Indiana

ATTORNEYS FOR TWIN CITY EDUCATIONAL
FOUNDATION, INC., AND EAST CHICAGO
COMMUNITY FOUNDATION, INC.

PETER J. RUSTHOVEN
DEBORAH POLLACK-MILGATE
PAUL L. JEFFERSON
Indianapolis, Indiana

ATTORNEYS FOR RIH ACQUISTIONS IN, LLC
D/B/A RESORTS EAST CHICAGO

RONALD D. GIFFORD
SCOTT D. HIMSEL
Indianapolis, Indiana



FILED

Apr 13 2009, 2:09 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-0808-CV-00437

GREGORY F. ZOELLER,
Indiana Attorney General,                           *Appellant (Plaintiff below)*,

v.

EAST CHICAGO SECOND CENTURY, INC.,
MICHAEL A. PANNOS, AND
THOMAS S. CAPPAS,                                   *Appellees (Defendants below)*.

Appeal from the Marion Superior Court, No. 49D01-0504-PL-014394
The Honorable Cale J. Bradford, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0708-CV-722

**April 13, 2009**

**Shepard, Chief Justice.**

The City of East Chicago and Showboat Marina Partnership agreed that part of the proceeds from riverboat gambling would flow back for community benefit through various entities. The Attorney General has now brought claims for constructive trust and unjust enrichment as to property in the hands of one of those entities, East Chicago Second Century, Inc., and its principals. We reverse the trial court's dismissal of these claims.

**Facts & Procedural History**

In 1993, Showboat Marina Partnership initiated the process of applying for a riverboat casino license in the City of East Chicago pursuant to Indiana's Riverboat Gambling Act. See Ind. Code § 4-33-1-1 *et seq*. (2008). Showboat entered into a local development agreement with East Chicago based on the recommendations of Mayor Robert Pastrick's Gaming Task Force. The agreement was memorialized in two letters the Mayor sent to Showboat, dated April 8, 1994, and April 18, 1995; the East Chicago Common Council ratified and endorsed both letters on September 11, 1995.

Under the agreement, Showboat agreed to "contribute annually to and for the benefit of economic development, education and community development in the city" an amount of total contribution equal to 3.75% of its adjusted gross receipts, as defined by Ind. Code § 4-33-2-2, in the event Showboat received a license from the Indiana Gaming Commission and began operating a casino in East Chicago. Showboat proposed that of the total contribution 1% be allocated directly to East Chicago; 1% to the Twin City Education Foundation, a non-profit corporation; 1% to the East Chicago Community Foundation, another non-profit; and 0.75% to

2

East Chicago Second Century, Inc., a for-profit corporation.  The agreement also included promises that Second Century would undertake development activities at sites within East Chicago, that all projects pursued by Second Century would conform to the City's development and master plans, and that all Second Century projects would require approval from the City.

The Commission issued a gaming license to Showboat on January 8, 1996, based in part on these representations, and the Commission incorporated the terms of the agreement as conditions to Showboat's receipt and maintenance of the license.  The gaming operation commenced in April 1997.  Between this commencement and June 2006, Second Century received about $16 million from the casino operation.

The casino went through several ownership changes after the license was granted.  In February 1999, the Commission approved transfer of the gaming license to Harrah's Entertainment, Inc., which continued to make the payments as required to maintain the license.  RIH Acquisitions IN, LLC, doing business as Resorts East Chicago ("Resorts") filed an application with the Commission in 2004, seeking to acquire the license from Harrah's.  The Commission approved that transfer on April 21, 2005.  The Commission subsequently asked the Attorney General to investigate the agreement; the Attorney General found that much of the $16 million could not be accounted for and could be traced to Second Century's principals.

On April 15, 2005, Second Century sought a declaratory judgment that Resorts would be required to continue the payments to Second Century.  In November 2005, Attorney General Steve Carter (now succeeded in office by Gregory F. Zoeller) sought to intervene in the lawsuit, and the trial court granted the request on April 27, 2006.  The Attorney General filed a counterclaim and crossclaim, seeking imposition of a constructive trust for public benefit and an accounting over the money paid to Second Century and its principals (collectively "Second Century").  Second Century moved to dismiss the Attorney General's claims, and the trial court did so.

The Attorney General appealed, and the Court of Appeals affirmed.  Carter v. City of East Chicago, 881 N.E.2d 1114 (Ind. Ct. App. 2008), vacated.  We granted transfer.

3

# I.    Does the Attorney General Have Authority to Bring this Case?

Second Century moved to dismiss on grounds that its status as a for-profit corporation took it out from under the provisions in the trust code that describe the Attorney General's supervisory role as respects charitable activity.  It argues on appeal that it was established under the agreement to benefit as a private for-profit corporation, and that "this non-charitable component eliminates the possibility that a public charitable trust was created," citing the definition of such trusts, Ind. Code § 30-4-1-2(5).  (Appellant's Br. at 5, 7.)  Second Century cites S. Ind. Gas and Elec. Co. v. City of Boonville, 252 Ind. 385, 248 N.E.2d 343 (1969), for the proposition that East Chicago was acting in a private or proprietary manner when it entered into the agreements and that this means they are not public contracts on which a charitable trust might be imposed.

The Attorney General argues that the funds paid to Second Century were intended to benefit the public of East Chicago.  He asserts that the money was to be used for the economic development of East Chicago, advancing local real estate and the local workforce, and that the establishment of Second Century was to be the means to that end under the Riverboat Gambling Act.[1]

The people's interest in the rectitude of entities created in the name of public good, such as charities, has long led to regarding the Attorney General as an officer with authority to enforce those interests.  The notion was hornbook law even in the time of Blackstone, who wrote:

> The king, as *parens patriae*, has the general superintendence of all *charities*; which he exercises by the keeper of his conscience, the chancellor.  And therefore whenever it is necessary, the attorney

---

[1] Casino gambling first came to Indiana in 1993 with the passage of the Riverboat Gambling Act.  See Ind. Code § 4-33-1-1 *et seq.*  Our General Assembly explicitly declared that one of the purposes behind allowing riverboat gambling was to foster economic development.  See Ind. Code § 4-33-1-2.  Thus, securing a riverboat license requires an applicant to obtain the endorsement of the city or community in which the riverboat would operate by providing assurances that economic development will occur in the endorsing city or community.  See Ind. Code §§ 4-33-6-7(b) and 4-33-4-1(a)(5).  The Indiana Gaming Commission may take the proposed economic development into consideration when granting riverboat licenses to competing applicants.  See Ind. Code § 4-33-6-7(a).

> general, at the relation of some informant, (who is usually called the *relator*) files ex officio an information in the court of chancery to have the charity properly established.

William Blackstone, 3 Commentaries 427, <u>cited</u> <u>in</u> 86 A.L.R.2d 1365 (1962).

This was the common law view of our own state's Attorney General: "The law is well settled that inasmuch as the enforcement of public charities are matters of public interest the attorney general appearing as a public officer is the proper party to maintain litigation involving questions of public charitable trusts." <u>Boice v. Mallers</u>, 121 Ind. App. 210, 96 N.E.2d 342, 344-45 (1950).

While the Attorney General is now considered a statutory officer possessing statutory powers, the legislature's subsequent adoption of the trust code (enumerating the Attorney General's role, Ind. Code § 30-4-5-12) did not abrogate the common law view of the Attorney General's authority, "but rather codified it." <u>In re Public Benevolent Trust of Crume</u>, 829 N.E.2d 1039, 1044 (Ind. Ct. App. 2005), <u>trans.</u> <u>denied</u>.

In filing his counterclaim, the Attorney General cited his general duty to represent the State in any matter involving the rights or interests of the State, including those for which no other provision is made by law, Ind. Code § 4-6-1-6, and noted the public interest in effective operation of the Riverboat Gambling Act. He also relied on the provisions of the trust code governing accounting by trustees, Ind. Code § 30-4-5-12.

And, as for whether courts should treat various entities as falling under the protections of the trust code skeptically as opposed to liberally, the General Assembly has given us a general direction:

> [N]o formal language is required to create a trust, but its terms must be sufficiently definite so that the trust property, the identity of the trustee, the nature of the trustee's interest, the identity of the beneficiary, the nature of the beneficiary's interest and the purpose to the trust may be ascertained with reasonable certainty.

Ind. Code § 30-4-2-1(b) (2008).

Consistent with this legislative approach, this Court long ago embraced the broad proposition that a "charitable trust is a gift to a general public use." State ex rel. Emmert v. Union Trust Co. of Indianapolis, 227 Ind. 571, 86 N.E.2d 450, 452 (1949). We adopted the definition that a "charitable trust is a gift for the benefit of persons, either by bringing their hearts and minds under the influence of education or religion, by relieving their bodies of disease, suffering or constraint, by assisting to establish them for life, by erecting or maintaining public buildings, or in other ways lessening the burdens or making better the condition of the general public, or some class of the general public, indefinite as to names and numbers." Id. Charitable intent is also an element pertinent to establishing a public trust. See id. at 453. See also Crawfordsville Trust Co. v. Elston Bank & Trust Co., 216 Ind. 596, 25 N.E.2d 626, 633 (1940) ("gifts to charitable uses should be highly favored and construed by the most liberal judicial rules"); Bible Inst. Colportage Ass'n of Chicago v. St. Joseph Bank & Trust Co., 118 Ind. App. 592, 75 N.E.2d 666, 670 (1947) (as for whether the language of an instrument creates a charitable trust, courts "will look through form to the substance.").

Whether Second Century qualifies as a public charitable trust is a respectable question, but it is not a grounds on which dismissal was warranted, because Ind. Code § 30-4-5-12 covers multiple entities other than public charitable trusts. As pertinent here, it covers what the Code calls "a trust for a benevolent public purpose." The legislature has defined such entities both with particularity and with a broad brush. Such trusts include "split-interest trusts (as defined in Section 4947 of the Internal Revenue Code)", and perpetual care funds "established under I.C. § 23-14-48-2" and other entities. The General Assembly has also brought within the ambit of Ind. Code § 30-4-5-12 "any other form of split-interest charitable trust that has both charitable and noncharitable beneficiaries." Ind. Code § 30-4-1-2(18) (2008).

Given the broad common law and statutory authority conferred upon the Attorney General to protect the public interest in charitable and benevolent instrumentalities, we conclude that it was error to dismiss the Attorney General's counterclaim on grounds that Second Century is a for-profit corporation.

6

## II.    Whether Unjust Enrichment is Available

A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery . . . where the circumstances are such that under the law of natural and immutable justice there should be a recovery . . . " Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991) (citation omitted). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." RESTATEMENT OF RESTITUTION § 1 (1937). To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. Bayh, 573 N.E.2d at 408.

The Attorney General argues that the State conferred a measurable benefit on Second Century by "mandating the payments in the first place as a condition precedent to the [Commission's] authorization of the gaming license." (Appellant's Br. at 19.)  But for the State's authorization of riverboat gambling and its statutory directive that gambling revenues benefit local economic development, the Attorney General says, Second Century would neither be receiving any funding nor even be in existence.  Under these circumstances, to allow Second Century to retain the benefit of these funds without fulfilling its obligation to engage in the economic development would be unjust and contrary to our legislature's directive.

Second Century contends that any claim for unjust enrichment undermines the Attorney General's request for imposition of a constructive trust, because such claim of benefit admits that Second Century is a non-charitable beneficiary. (Appellee's Br. at 9-10.)  This notion of unjust enrichment is misplaced.  The fact that a claimant has requested imposition of a constructive trust does not affect the right of the claimant to assert a claim for unjust enrichment and restitution where the contention is that one person has been unjustly enriched at the expense of another.

It was error to dismiss the Attorney General's complaint on these grounds.

## III.    Whether the Unjust Enrichment Claim is Actionable

7

The Attorney General argues that the unjust enrichment claim is actionable "because there is no contract between [Second Century] and the Attorney General or the State that controls the rights of these parties . . ." (Appellant's Br. at 21.)  Second Century has argued that the unjust enrichment claim is unavailable because the local development agreement specifically addressed the subject matter of the funds that Second Century should receive.  (Appellee's Br. at 12.)

There are three general types of contracts – express, implied-in-fact, and constructive contracts.  See e.g., Bayh, 573 N.E.2d at 427 n.11.  Express and implied-in-fact contracts are traditional contracts, while constructive contracts, "also referred to as quantum meruit, contract implied-in-law, [unjust enrichment], or quasi-contracts[,]" are not contracts at all.  Id. at 408.

Indiana's Court of Appeals has declared, "The existence of express terms in a valid contract precludes the substitution of and the implication in law of terms regarding the subject matter covered by the express terms of the contract."  Keystone Carbon Co. v. Black, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992) (citing Kincaid v. Lazar, 405 N.E.2d 615 (Ind. Ct. App. 1980)).  "When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law."  Id.

There was an express contract in this transaction, but it was not one to which the Attorney General or the State were parties.  Showboat entered into the local development agreement with East Chicago.  That transaction is thus not a bar to the Attorney General's claim for unjust enrichment, an equitable remedy.

Moreover, the agreement is not like an ordinary commercial contract at all.  This agreement was a mode of implementing the casino's obligation to contribute to local economic development.  Its terms were intended to control the rights and duties of East Chicago and the casino licensee in relation to each other; they were not intended to control the rights of any non-parties.  The Attorney General's claim for unjust enrichment is actionable.

**IV.     Is Fraud a Necessary Prerequisite to Constructive Trust?**

8

Second Century has argued that the claim for imposition of a constructive trust is defective because the Attorney General has not pleaded any allegations of fraud. (Appellee's Br. at 13.)

The general notion of constructive trust is succinctly outlined in the Restatement (Second) of Trusts:

> [A] relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

RESTATEMENT (SECOND) OF TRUSTS § 1 cmt. e (1959), cited in Hicks v. State, 635 N.E.2d 1151 (Ind. Ct. App. 1994), trans. denied.

Cases and propositions cited by Second Century are complementary to this formulation. "A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Kalwitz v. Estate of Kalwitz, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005), trans. denied. This type of trust is more in nature of an equitable remedy rather than an independent cause of action. Id. (citing Chosnek v. Rolley, 688 N.E.2d 202, 211 (Ind. Ct. App. 1997)). (Appellee's Br. at 13.)

While Indiana courts have certainly said on occasion that fraud is a prerequisite, see, e.g., Brown v. Brown, 235 Ind. 563, 135 N.E.2d 614, 617 (1956), the meaning of this declaration is not confined to fraud as one might define it for purposes of criminal law. Rather, the remedy is available where there is standard fraud (i.e., misrepresentation, reliance, etc.) or a breach of duty arising out of a confidential or fiduciary relationship. United Steelworkers of Am. v. N. Ind. Public Serv. Co., 436 N.E.2d 826, 831 (Ind. Ct. App. 1982).

9

This view of constructive trusts finds repetition beyond our own caselaw. See, e.g., Hertz v. Klavan, 374 A.2d 871, 873 (D.C. 1977) (constructive trust is a flexible remedial device used to force restitution in order to prevent unjust enrichment); see also Lee v. Wong, 552 P.2d 635 (Hawaii 1976); Dexter v. Dexter, 481 F.2d 711, 713-14 (10th Cir. 1973) (before a constructive trust may arise under Kansas law, there must be a showing of either fraud, unconscionable conduct, or questionable ethics resulting in unjust benefit to the wrongdoer); Village of Wheeling v. Stavros, 411 N.E.2d 1067, 1070 (Ill. App. Ct. 1980) (the assumption that a constructive trust may only be imposed where there is fraud or the breach of a fiduciary relationship is incorrect; a constructive trust is by no means restricted to those grounds).

The Attorney General's allegations against Second Century and its principals on this point are:

> Upon information and belief, the monies paid to Second Century under the Showboat Agreement have not led to public benefit commensurate with the monies paid out under said agreement, but instead have led mainly to the unjust enrichment of the directors and officers of Second Century.

(Appellant's App. at 137.)  This allegation states a claim for constructive trust.

### Conclusion

We reverse the dismissal entered by the trial court and remand for further proceedings on the merits.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.