**In the Matter of the ESTATE OF Pattie L. OWEN, Deceased,**

**Rodney M. Logan and Carol Logan, Co–Personal Representatives, Appellants–Respondents,**

v.

**Toni L. Lyke, Appellee–Petitioner.**

**No. 65A05–0602–CV–53.**

Court of Appeals of Indiana.

Oct. 20, 2006.

Patrick A. Shoulders, Jean M. Blanton, Ziemer, Stayman, Weitzel & Shoulders, LLP, Evansville, IN, Attorneys for Appellants.

Edward W. Johnson, Johnson, Carroll and Griffith, Evansville, IN, for Attorney for Appellee.

## OPINION

MAY, Judge.

Rodney and Carol Logan, as co-personal representatives of the Estate of Pattie L. Owen, appeal the probate court's construction of Owen's will in favor of Toni Lyke. The probate court correctly determined Article V of Owen's will is ambiguous but erred when construing certain portions of it. We affirm in part and reverse in part.[1]

## FACTS AND PROCEDURAL HISTORY

Owen died on August 25, 2005. Her will, dated July 15, 2005, provides in relevant part as follows:

## ARTICLE V

I hereby give, devise and bequeath my real estate located in Robb Township, Posey County, Indiana, being eighty (80) acres, located in § 17–4–13, more or less, and legally described as follows:

[legal description omitted]

to my daughter, **Toni L. Lyke,** for her lifetime, and at her death, then to her children **Jason A. Lyke, Joshua L. Lyke and Virginia S. Lyke,** equally, in fee simple ownership. I further request that the amount of Four Thousand Five Hundred Dollars ($4,500.00) be put aside soon after my death, from the next harvest, to pay the real estate taxes and to plant next year's crop.

I further appoint my friends **Rodney Logan** and **Carol Logan** to act as Co–

---

1. We heard oral argument in Indianapolis on August 3, 2006. We commend counsel for their excellent presentations.

Trustees of the farm during my daughter Toni L. Lyke's lifetime, and they shall be paid the joint amount of One Thousand Dollars ($1000.00) per year for acting as Co–Trustees. My Co–Trustees appointed herein shall also be responsible for leasing the residence located on that real estate to the person or persons and for the rental amount as they shall see fit. My daughter, Toni L. Lyke shall not be permitted to rent that residence if she is married at that time to Brian Lyke.

It is my desire that so long as feasible, my Co–Trustees shall continue the tenancy of that farm with Beuligmann Brothers, due to my long and satisfactory relationship with Beuligmann Brothers.

If at any time that that [sic] 80 acres or any part thereof shall be placed for sale, then my friends Rodney and Carol Logan shall be permitted first opportunity to purchase the real estate or they shall be given the opportunity to match any offer made for the purchase of the real estate.

(Appellant's App. at 2–3.) [2]

The will was admitted to probate on September 7, 2005, and the Logans were appointed co-personal representatives. On November 1, 2005, Lyke filed a petition to construe the will under Ind.Code § 29–1–6–5, claiming Article V was ambiguous. After a hearing on November 28, 2005, the probate court entered the following relevant findings and conclusions:

### CONSTRUCTION OF WILL

(January 3, 2006)

\* \* \* \* \* \*

---

2. Counsel for the Logans did not consecutively number the pages in the appendix as required by Ind. Appellate Rule 51(C). We have numbered the pages consecutively and cite to those numbers.

## II.

### Specific Findings

Ms. Owen intended that her daughter, Toni L. Lyke, was to receive a life estate in the entire eighty (80) acres and its improvements.

Ms. Owen intended that Toni's children were to be the remaindermen.

Both Toni's life estate and the grandchildren's future fee simple interest vested upon Ms. Owen's death. *See Lewis v. Clifton,* (Ind.App.2005), 837 N.E.2d 1016, 1019.

While the Will used language that indicates Ms. Owen intended to establish a trust to manage the farm, such an arrangement would be incompatible with the use of estate monies to pay only the first year's taxes and the first crop year's expenses.

Generally, one receiving a life estate under Indiana law takes real estate subject to the obligations thereon. And, if the property involved is to be held in trust, the trust would be responsible for all obligations on the real estate. *Wright v. James [Jones], (Ind.1886),* 105 Ind. 17, 4 N.E. 281[;] *Commons v. Commons,* (Ind.1888), 115 Ind. 162, 16 N.E. 820[.]

Here, Ms. Owen provided for the first year's obligations to be paid by devise from her estate, but did not instruct that any other obligation be paid by the purported trust. Therefore, Toni L. Lyke takes the life estate subject to all obligations.

And while Ms. Owen indicates her preference that the Beuligmann Brothers be retained as tenants, this later appearing language is not sufficient to take away or decrease Toni's life estate

and Toni's legal right to manage the farm. *Oliphant v. Pumphrey,* (Ind. 1923), 193 Ind. 656, 141 N.E. 517.

Also, Article V's ostensible restriction on Toni's right to either rent or rent out the residence on the eighty (80) acres if she is married to Brian Lyke is not only confusing and ambiguous, it may well be against public policy. *Gladden v. Jolly,* (Ind.App.1995), 655 N.E.2d 590.

In essence, Ms. Owen never created a trust subsequent to her devise of a life estate to her daughter and the vesting of the remainder in her grandchildren. *Stockton v. Northwestern Branch of the Women's Foreign Missionary Soc.,* (Ind. App.1956), 127 Ind.App. 193, 133 N.E.2d 875.

Then, Article V purports to place a restriction on the sale of all or any part of the real estate by giving the Logans, who would have absolute control over the real estate, first right of refusal if the property is ever offered for sale.

Such an arrangement might well frustrate Ms. Owen's intent to provide for her daughter during Toni's lifetime and might divest the grandchildren also.

Finally, Indiana's Rule Against Perpetuities might well be violated by these unlimited options. I.C. 32–17–8–5[.]

### III.

#### Conclusion

Article V of Ms. Owen's Will is ambiguous. The Court must construe the entire Will to give effect to Ms. Owen's intent.

Ms. Owen intended that Toni L. Lyke was to have a life estate in the eighty (80) acres and its improvements.

Ms. Owen intended that Ms. Owen's grandchildren ... would take the real estate equally in fee simple upon Toni's death.

The purported restrictions on Toni's life estate are incompatible with Ms. Owen's intent. Therefore, no trust was created and the Logans have no authority to interfere with Toni's enjoyment of her life estate nor with the remaindermen's interest upon Toni's death.

(*Id.* at 29–32) (formatting and punctuation altered).

### DISCUSSION AND DECISION

Ordinarily when the probate court enters findings of fact and conclusions of law, we apply a two-tiered standard of review: we determine whether the evidence supports the findings and then whether the findings support the judgment. *St. Mary's Medical Center, Inc. v. McCarthy,* 829 N.E.2d 1068, 1072 (Ind.Ct. App.2005), reh'g denied. Findings and conclusions are set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* However, because the facts are not in dispute, the only issue is whether the probate court correctly construed Owen's Will. The interpretation, construction or legal effect of a will is a question to be determined by the court as a matter of law. In re Estate of Meyer, 668 N.E.2d 263, 265 (Ind.Ct.App.1996), reh'g denied, trans. denied 683 N.E.2d 581 (Ind.1997). We review such questions of law de novo and owe no deference to the probate court's legal conclusions. *St. Mary's,* 829 N.E.2d at 1072.

Our objective in construing a will is to determine and give effect to the testator's true intent as expressed in the will. *Gladden v. Jolly,* 655 N.E.2d 590, 592 (Ind.Ct.App.1995). We must consider and give effect to every provision, clause, term and word of the will, if possible, to determine that intent. *Id.* We look to the "four corners" of the will and the language used in the will to determine the testator's

intent. *Meyer,* 668 N.E.2d at 265. We assume the testator used the words in a will in their common and ordinary sense and meaning. *Id.* If there is an ambiguity in the language of the will, we must first determine whether other provisions of the will make clear the testator's intent. *In re Estate of Saylors,* 671 N.E.2d 905, 908 (Ind.Ct.App.1996).

 Once the testator's intent has been determined, it is controlling and must be given effect so long as it is not contrary to law. *Gladden,* 655 N.E.2d at 592. "The provisions of a will must be upheld and construed to give effect to the intent expressed in it, if possible, rather than have that intent frustrated." *Id.* A testator may devise her property with attached terms or subject to conditions, "regardless of how capricious or unreasonable the terms or conditions may seem, unless they violate some statute or established principle of law." *In re Estate of Kirkendall,* 642 N.E.2d 548, 552 (Ind.Ct.App.1994).

### 1. *Lyke's Life Estate*

In Article V, Owen both devises an 80–acre farm to Lyke for her lifetime and appoints the Logans as co-trustees of the farm during Lyke's lifetime, requiring us to determine whether Owen intended Lyke's life estate to be held in trust by the Logans or to be held by Lyke without trust.

 In both the will and trust[3] contexts, substance trumps form. As to trusts, Ind.Code § 30–4–2–1(b) provides:

Except as required in the applicable probate law for the execution of wills, no formal language is required to create a trust, but its terms must be sufficiently definite so that the trust property, the

identity of the trustee, the nature of the trustee's interest, the identity of the beneficiary, the nature of the beneficiary's interest and the purpose of the trust may be ascertained with reasonable certainty.

Similarly, a devise in a will need use no particular form or words to create a life estate. *Gladden,* 655 N.E.2d at 592. A devise for or during the devisee's lifetime, or for as long as the devisee shall live, or until the devisee's death, or such similar phrase, creates a life estate in the devisee, unless other provisions show another intent. *Id.*

If Article V grants a life estate free of trust, as Lyke suggests, then it contains apparently superfluous language, *e.g.,* the appointment of trustees, assignment of duties, and setting of compensation. Lyke dismisses this trust language as confusing, unclear and incompatible with the remainder of Article V. The Logans, however, assert these provisions "show another intent" and demonstrate Owen intended to create a trust. (Appellant's Br. at 5.) Because we must "strive to give effect to every provision, clause, term, or word if possible" when construing a will, *In the Matter of Estate of Walters,* 519 N.E.2d 1270, 1272 (Ind.Ct.App.1988), *trans. denied,* we agree with the Logans.

Article V identifies the trust property (the 80–acre farm), the trustees (the Logans), and the beneficiary (Lyke). Ind. Code § 30–4–2–6(b) provides the "extent of the trustee's estate in the trust property is limited to that which is necessary to enable him to perform the trust." Article V imposes two specific duties on the Logans: to rent the residence and to manage the farm.[4] Article V provides Lyke will

---

**3.** A trust is a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held. Ind.Code § 30–4–1–1(a).

**4.** Owen also requested $4,500 be set aside

have a life estate in the 80 acres and her children will be the fee simple owners of the farm at her death. The purpose of the trust is the management of the farm and the rental of the residence during Lyke's lifetime.

■ Lyke cites *Johnson v. Hicks*, 231 Ind. 353, 108 N.E.2d 129 (1952) for the proposition that a devise or bequest made in clear and decisive terms may not be diminished or cut down by later terms that are less clear. She asserts Owen's appointment of trustees for the property diminished her rights in the "clearly stated life estate." [5] (Br. of Appellee at 7–8.) Lyke argues Owen was required to "place the life estate in the trust in the beginning of [Article] V" for a trust to be effective. *(Id.* at 8.) We disagree.

■ The test we employ when a devise contains "language apparently at variance with other parts of a devise is whether the intent of the testator was to give a smaller estate than the words making the gift, standing alone, without considering the limiting clause, import, or to impose restraints upon the estate given." *Rusk v. Zuck*, 147 Ind. 388, 393, 45 N.E. 691, 692 (1897), *reh'g denied* 147 Ind. 388, 46 N.E. 674 (1897). In other words, when two provisions of a will conflict, we must determine whether the testator intended to devise a smaller estate or to devise the full estate with restraints.

■ By including language suggestive of a trust, we believe Owen intended a smaller estate, that is, Lyke's life estate in the farm would be held in trust. Accordingly, the trust language in the latter part of Article V does not impermissibly cut down the life estate given in the former part of Article V. Lyke has a life interest in the farm trust over which the Logans are trustees. At Lyke's death, the farm trust will terminate and her children will become owners of the farm in fee simple.

### 2. *Validity of Rental Restriction*

Article V of the will assigns the Logans the duty of leasing the residence "to the person or persons and for the rental amount as they shall see fit." (Appellant's App. at 3.) This broad grant of discretion is limited by the next sentence: "My daughter, Toni L. Lyke shall not be permitted to rent that residence if she is married at that time to Brian Lyke." *(Id.)* The probate court found: "Article V's ostensible restriction on Toni's right to either rent or rent out the residence on the eighty (80) acres if she is married to Brian Lyke is not only confusing and ambiguous, it may well be against public policy." *(Id.* at 31)

As noted above, a testator may devise her property with attached terms or subject to conditions, "regardless of how capricious or unreasonable the terms or conditions may seem, unless they violate some

---

from the next harvest to pay taxes and plant the next crop. The probate court found provision for payment of only one year's taxes and planting expenses to be incompatible with the establishment of a farm trust. However, Ind.Code § 30–4–3–3 grants a trustee the power to perform "every act necessary or appropriate for the purposes of the trust." Thus the trustees would have the authority to manage the farm, including paying taxes and using a portion of subsequent harvests to pay for the following years' crops, regardless of whether Article V specifically granted them this authority for one year.

**5.** We note a life tenant does not have unfettered control and use over the property but must consider the interest of the remaindermen as well. *See Ebersol v. Mishler*, 775 N.E.2d 373, 379 (Ind.Ct.App.2002) ("A life tenant is bound to take reasonable care to preserve and protect the property for the future enjoyment of the remaindermen."), *trans. denied* 792 N.E.2d 39 (Ind.2003).

statute or established principle of law." *Kirkendall,* 642 N.E.2d at 552. Lyke argues the rental restriction encourages divorce and, by analogy to a condition in restraint of marriage,[6] is against public policy. The Logans respond the rental restriction neither encourages divorce nor restrains marriage but merely prevents Lyke from renting the residence while married to Brian.[7]

Indiana courts have not considered, in the will context, the validity of conditions alleged to encourage divorce.[8] However, the validity of such conditions has been questioned:

> As a rule, a condition to devise by will, the tendency of which is to encourage divorce or bring about a separation of husband and wife, is against public policy and void. In this regard, it has been said that it is the likely effect of the provisions of a will on the person to be influenced rather than the personal purpose of the testator which will determine whether a provision is void as against public policy for inducing the parties to divorce. Even so, the view has also been followed that if the dominant motive of the testator is to provide support in the event of separation or divorce, the condition to a devise is valid. Further-

more, it has been said that where there is a reasonable economic basis for placing a condition on a bequest or a devise that the beneficiary divorce, courts should not attempt to probe the testator's mind and determine whether in fact his or her motive was to disrupt the beneficiary's marriage.

52 Am.Jur.2d *Marriage* § 117 (2000) (footnotes omitted). *See also* J.F. Ghent, Annotation, *Wills: Validity of Condition of Gift Depending on Divorce or Separation,* 14 A.L.R.3d 1219 (1967).

■ Many of the wills discussed in cases from other jurisdictions contain an explicit provision calling for or contemplating the divorce from or separation of the devisee and his or her spouse. *See, e.g., In re Will of Collura,* 98 Misc.2d 1104, 415 N.Y.S.2d 380, 380 (N.Y.Sur.Ct.1979) ("In the event my son, John, divorces his present wife, Joan, or she shall die, then ... the balance of the trust ... shall be paid over absolutely to my son, John."). The rental restriction at issue here is not as direct as these provisions but does, nonetheless, tend to encourage Lyke to divorce Brian in order to be able to rent the residence. We conclude the condition preventing Lyke from renting the residence

---

**6.** Ind.Code § 29–1–6–3 provides: "A devise to a spouse with a condition in restraint of marriage shall stand, but the condition shall be void."

**7.** As noted at oral argument, the plain language of the rental restriction does not prevent *Brian* from renting the residence.

**8.** The issue was briefly mentioned but not decided in *Moore v. Moore,* 654 N.E.2d 904 (Ind.Ct.App.1995). In *Moore,* Husband argued Wife sought to divorce him solely because her mother's estate required Wife divorce Husband or Husband die before Wife could receive a complete distribution. Because such trust provisions are against public policy and void, Husband argued, Wife had failed to present sufficient evidence to dis-

solve the marriage on grounds of irretrievable breakdown. We noted, however:

> [Husband] is neither appealing the trial court's distribution of property nor did he contest the trust; therefore, this Court need not decide whether the trust provision was void against public policy. [Husband]'s reliance on various cases from other jurisdictions, *see Estate of Gerbing* (1975), 61 Ill.2d 503, 337 N.E.2d 29; *Hood v. St. Louis Union Trust Co.* (1933), 334 Mo. 404, 66 S.W.2d 837; *Will of Collura* (1979), 98 Misc.2d 1104, 415 N.Y.S.2d 380; *In re Estate of Heller* (1968), 39 Wis.2d 318, 159 N.W.2d 82, is not of value, as these cases are appeals from the actual instrument. *Id.* at 905.

while married to Brian is void because it is against public policy.[9]

### 3. *Validity of Right of First Refusal*

The final paragraph of Article V provides:

> If at any time that that [sic] 80 acres or any part thereof shall be placed for sale, then my friends Rodney and Carol Logan shall be permitted first opportunity to purchase the real estate or they shall be given the opportunity to match any offer made for the purchase of the real estate.

(Appellant's App. at 3.) The Logans argue this is a valid right of first refusal to purchase the farm should it be placed for sale.

A right of first refusal is a "potential buyer's contractual right to meet the terms of a third party's offer if the seller intends to accept that offer." Black's Law Dictionary 1325 (7th ed.1999). The related right of preemption is a "potential buyer's contractual right to have the first opportunity to buy, at a specified price, if the seller chooses to sell." *Id.* By contrast, in an option to purchase real property, "an owner of realty enters an agreement with another allowing the latter to buy the property at a specified price within a specified time, or within a reasonable time in the future, but without imposing an obligation to purchase" on the potential buyer. *Id.* at 1121.

■■■ When initially granted, a right of first refusal is "a dormant set of rights that does not entitle the holder to take any action until receipt of a bona fide offer." *Beiger Heritage Corp. v. Estate of Kilbey*, 667 N.E.2d 184, 186 (Ind.Ct.App.1996), *reh'g denied, trans. denied sub nom. Beiger Heritage Corp. v. Carnegie Proper-*

*ties, Inc.*, 683 N.E.2d 582 (Ind.1997). Once the holder of a right of first refusal receives notice of a third party's offer, the right of first refusal is transmuted into an option. *Id.* The parties must then strictly comply with the terms stipulated in the contract for the exercise of the option to be effective. *Id.*

■ The "first opportunity to purchase" clause is not a right of first refusal because it does not reference a third-party offer. The clause lacks a specific price term. However, the asking price when the property is put on the market could be considered an implicit price term. This would allow the Logans to purchase the farm, without requiring a third party bid, by agreeing to the asking price. Thus, this clause is a valid right of preemption, a conclusion that comports with Owen's intent to provide the Logans with the opportunity to purchase the property. *See In re Estate of Hensley*, 413 N.E.2d 315, 317 (Ind.Ct.App.1980) ("We think the language in the will sufficiently qualified the right of first refusal so that it could be exercised without a third party bid.... The language ... clearly conveys the testatrix's intent to give [her son] the opportunity to buy the farm[.]").

■ As Lyke concedes, the "opportunity to match" clause is "a valid condition and is not inconsistent with the life estate, or the rights of the remaindermen, her children, who would be the only ones who could sell the remainder interest in the real estate." (Br. of Appellee at 10.) Accordingly, that portion of Article V constitutes a valid right of first refusal. Thus, if the property or a part thereof is placed for sale, the Logans will have the opportunity to purchase the property at the asking

---

**9.** The Logans may still rent the residence "to the person or persons and for the rental amount as they shall see fit." (Appellant's App. at 3.)

price or to match any offer made for the purchase of the farm.

■ The probate court found the provision might violate the rule against perpetuities. The rule against perpetuities is "an ancient, but still vital, rule of property law intended to enhance marketability of property interests by limiting the remoteness of vesting." *Buck v. Banks,* 668 N.E.2d 1259, 1260 (Ind.Ct.App.1996). Indiana has adopted the Uniform Statutory Rule Against Perpetuities. Ind.Code § 32–17–8–2 provides the statutory rule against perpetuities does not apply to a "nonvested property interest ... arising out of a nondonative transfer." Although a right of first refusal is a nonvested property interest, *see Beiger,* 667 N.E.2d at 186 (describing right of first refusal as a "dormant set of rights"), the right granted to the Logans arose from a donative transfer, that is, a bequest. *Cf. Buck,* 668 N.E.2d at 1261 (real estate contract provision granting right of first refusal to purchase additional property was nonvested property interest arising out of nondonative transfer and thus not within the statutory rule against perpetuities but rather common law rule).

■ Ind.Code § 32–17–8–3(a) provides:

A nonvested property interest is valid if:

(1) when the interest is created, the interest is certain to vest or terminate not later than twenty-one (21) years after the death of an individual then alive; or

(2) the interest either vests or terminates within ninety (90) years after the interest's creation.

The language of the right of first refusal indicates the right was personal to the Logans ("my friends Rodney and Carol Logan"). Thus, the right could not be extended to the Logans' heirs or assigns and would terminate at the death of the survivor of them. As a result, the right is certain to vest or terminate at the death of the Logans, and thus would not violate Ind.Code § 32–17–8–3.

## CONCLUSION

Article V of Owen's will is ambiguous. Article V granted Lyke a life estate in the farm, with the remainder granted to her children, which life estate is to be held in trust with the Logans as trustees. The rental restriction is void as against public policy. The right of preemption and the right of first refusal granted to the Logans are valid and do not violate the rule against perpetuities. Accordingly, we affirm in part and reverse in part.

Affirmed in part, reversed in part.

SULLIVAN, J., concurring.

BAKER, J., concurring in part and dissenting in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part.

My colleagues have done an admirable job of giving life to Owen's testamentary words. I concur in large part with their conclusions but must respectfully dissent from the finding regarding the "rental restriction." Slip op. p. 9.

Article V bestows a life estate in trust upon Lyke. It does not, however, afford her the right to rent the residence; and in fact, it imposes the duty of renting the residence upon the Logans without in any way requiring that they rent or consider renting the farm to Lyke. As noted by the majority, the trust's purpose "is the management of the farm and the rental of the residence during Lyke's lifetime." Slip op. p. 7. The trust, therefore, is not intended to bestow upon Lyke the right to rent the residence. Had the document been silent on this matter, we would not conclude that Lyke had a right to rent the residence

because it places rental responsibility on the Logans and does not give Lyke a right of first rental refusal. Thus, in my view the trial court erred in finding that Lyke's "*right* to either rent or rent out the residence" was restricted, inasmuch as she did not have such a right in the first place. Appellant's App. p. 31 (emphasis added).

I also part from my colleagues' conclusion that this clause tends to encourage Lyke to divorce Brian, inasmuch as Article V does not prevent the Logans from renting to *Brian* while he and Lyke are married; it merely provides that Lyke may not be the tenant. Moreover, whether Lyke is a tenant in no way affects her right to receive the rent proceeds. Thus, she need not divorce Brian either to live on the property or to receive the income from the rental of the residence. I would reverse the trial court, therefore, on its finding that the rental restriction is void as against public policy. In all other respects, I concur with the majority opinion.