Ralph DRAKE, Appellant,

v.

**OLD NATIONAL TRUST CO.,
et al., Appellees.**

No. 77A01–0610–CV–463.

Court of Appeals of Indiana.

Aug. 8, 2007.

Eric A. Frey, Anderson Frey & Nichols, Terre Haute, IN, Attorney for Appellant.

Peter J. Sacopulos, Sacopulos Johnson & Sacopulos, Terre Haute, IN, Attorney for Old National Trust Co.

Robert S. Hulett, Ellen Morrison Townsend, Joseph M. Hendel, Hackman Hulett & Cracraft, LLP, Indianapolis, IN, Attorneys for Johnny Swalls and Johnny Swalls Auction & Appraisal, Inc.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Ralph Drake appeals the trial court's grant of summary judgment to Old National Trust Co. and other defendants on Drake's action seeking an order that he held the right to purchase certain real estate ("the Property") owned by the late Frances G. Birdsong.

We affirm.

### ISSUE

Whether the trial court erred in granting the motion for summary judgment.

### FACTS

On October 4, 1994, Birdsong executed her last will and testament ("Will"). In Item I, the Will directed that from her estate, her personal representative pay her debts, the expenses of her last illness and burial, and the administration costs and taxes resulting from her death. The next

provision, Item 2, "g[a]ve, devise[d] and bequeath[ed] all the rest and residue of [her] estate, real or personal and wheresoever situate, to [the predecessor of Old National], as Trustee and in trust, on terms and conditions and for the uses and purposes" provided in the nine articles that followed. (App.66).

The articles named the Frances G. Birdsong Testamentary Trust ("Testamentary Trust"), and granted Old National "full power and authority ... to sell or otherwise dispose of all or any part of" the assets of the trust, including "real" property, "according to its sole judgment and discretion without limitation." (App.66, 67). Article 5 specified that upon the sale of any asset, the proceeds were to be added to the principal of the Testamentary Trust. Article 7 provided that the Testamentary Trust income was to "be paid to and or for the benefit of [her] daughter, Sue Darlene Birdsong,[1] for and during her lifetime," and that Old National was authorized to "invade the principal" for her "care, comfort and support." (App.69). Further, upon the daughter's death, the Testamentary Trust was to terminate, with one-third "of the trust Estate" to be distributed to "Conrad Griffith and Mahala Griffith, husband and wife, if living, or if both of them are deceased, ... to Terry Griffith," with "the remaining Trust Estate" to be distributed equally among her nieces and nephews and those of her deceased husband. Id.

Following the nine articles of the Testamentary Trust, Item III of her will provided that in the event her daughter predeceased Birdsong, the estate would be distributed in the same manner as provided for in the Testamentary Trust upon

death of the daughter. Item IV of her will requested that one of the Griffiths be named her daughter's guardian if "either needed or required." (App.70). Then, Item V of her will states as follows:

I hereby request and direct that Ralph Drake shall have the first option to purchase the real estate I own on the date of my death in Sullivan County, Indiana,[2] at the time of sale of said real estate.

Id. Item VI of the Will named attorney Jeffrey A. Boyll as Personal Representative of the Will.

On November 19, 1999, as attorney-in-fact for Birdsong pursuant to a power of attorney dated March 30, 1993, Conrad Griffith created the Frances G. Birdsong "Revocable Trust" on her behalf. (App.73). The Revocable Trust designated Old National as Trustee and directed Old National to pay the entire net income of the Revocable Trust for the benefit of Frances G. Birdsong. Further, Old National was granted "complete power to do all things which it may deem desirable or expedient" to do for the benefit of "the [Revocable] Trust Estate," including the power to convey or sell property "on such terms and conditions as [Old National] should deem best." (App.74, 75).

On December 30, 1999, Birdsong executed a quitclaim deed conveying the Property to Old National, as trustee under the Revocable Trust. On June 3, 2001, Birdsong died.

Counsel for Birdsong's estate sent a letter dated September 3, 2001, to Drake informing him that the Property had been appraised at $608,500.00, the details of which were available for his review, and

---

1. The parties indicate that the daughter is disabled.

2. Birdsong's real estate in Sullivan County is the Property, the subject of this lawsuit. According to Drake, he had leased the Property from Birdsong for many years.

that he could purchase the Property for that amount within thirty days of receiving the letter. Drake requested an additional sixty days "to consider purchasing the real estate." (App.171). He was granted "until December 12, 2001 to complete the purchase" of the Property, and was advised that "his option to do so" would "expire" if he did not act accordingly. (App.172). Drake did not proceed with the purchase.

On February 7, 2002, an auction of the Property was conducted by Johnny Swalls Auction and Appraisal, Inc. Some of the co-defendants in this action bid on parcels of the Property. Drake attended the auction, but he did not bid. The highest auction bids for the Property, totaling $515,445.00, were accepted by Boyll, as personal representative of Birdsong's estate and agent for Old National.

On March 6, 2002, Drake advised Boyll by letter that "the language of the will is that the option is activated at the time of sale of said real estate," which he believed was set when the purchase price for the Property was determined. (App.175). The letter further stated that Drake was now "exercising his option to purchase" the Property, and sought "documentation to allow [him] ninety (90) days to complete his option on the same terms as the bidders at the auction." *Id.* Apparently, an agreement to rescind the auction results could not be reached with the successful bidders/purchasers of the Property.[3]

Therefore, on March 27, 2002, Drake filed a complaint against Old National and Boyll, the personal representative of Birdsong's estate, seeking an order for specific performance of his alleged right to purchase the Property.[4] On April 14, 2003, Drake filed an amended complaint, adding the auction company and successful bidders as defendants. The amended complaint sought a determination that Drake possessed a "right and option to purchase" the Property and an order for specific performance in that regard. (App.32). The amended complaint also alleged that the December 20, 1999, quitclaim deed executed by Birdsong that conveyed the Property to Old National was "void and of no force and effect by reason" Birdsong's "lack of capacity" or being "not mentally competent to execute a deed or transact business on" the date thereof. (App.29). Thereafter, the parties engaged in discovery.

On January 20, 2006, Old National filed a motion for summary judgment, with designated evidence and a memorandum of law in support. Subsequently, the other defendants filed similar motions. Drake filed a memorandum opposing summary judgment, with designated evidence. The trial court heard oral argument on August 22, 2006.

On August 23, 2006, the trial court granted summary judgment to Old National and the other defendants. The trial court found that it was not until "March 6, 200[2] (27 days after the auction)" that Drake "attempted to assert his rights, if any, under Item V" of the Will. (App.20). The trial court then concluded that by waiting "until twenty-seven days after the sale to attempt to exercise his first option to purchase at the time of the sale," Drake had "waived whatever rights he was given, if any, under Item V" of the Will. (App.21). It further found that "[h]aving waived" any rights given to him under the Will, he did "not have standing to attempt to set

---

**3.** As Drake phrases it, "The purchasers at the auction sale refused to allow Drake's first option to be closed and this litigation ensued." Drake's Br. at 3.

**4.** This complaint is not included in Drake's Appendix.

aside the deed dated December 20, 1999," by which Birdsong conveyed the Property to the Revocable Trust. *Id.*

## DECISION

When we review the appeal of a decision by the trial court to deny a motion for summary judgment, our standard of review

> is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Corr v. American Family Ins.*, 767 N.E.2d 535, 537 (Ind.2002). Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting summary judgment. *Old Romney Development v. Tippecanoe County*, 817 N.E.2d 1282, 1285 (Ind.Ct. App.2004). A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.* Further, as the party appealing from a summary judgment decision, Drake has the burden of persuading us that the grant of summary judgment was erroneous. *See Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind.2001).

Drake argues that inasmuch as the Will expressed Birdsong's clear intent that he "have the opportunity to purchase the property ahead of—or prior to all other prospective purchasers," and the Will did not specify the period of time in which he was to exercise the option, the trial court erred "in concluding that Drake had to outbid the prospective purchasers at the auction in order to preserve his 'first option.' " Drake's Br. at 6. Therefore, he concludes, the trial court "erred in holding that he had waived his right to purchase" the Property and granting summary judgment to the defendants. *Id.* at 7. His argument does not convince us that the grant of summary judgment was erroneous. *See Owens*, 754 N.E.2d at 908.

We agree with Drake that the Will expressed Birdsong's intent that he have the first option to purchase the Property. Further, contrary to the assertions of Old National, we do not find that the other provisions of the Will and Testamentary Trust necessarily preclude giving effect to Item V.[5] However, we cannot accept Drake's contention that under the facts established by the designated evidence, he still held the option to purchase given him under Item V of the Will on March 6, 2002.

An option to purchase real estate may be created by a will. L.S. Tellier, Annotation, *Option Created by Will to Purchase Real Estate*, 44 A.L.R.2d (1955) § 1(b). If no time is specified in the will, an option to purchase must be exercised within a reasonable time, or the right is lost. *Id.; see also* John P. Ludington, Annotation, *Time in Which Option Created by Will to Purchase Real Estate Must be Purchased Is to Be Exercised*, 82 A.L.R.3d (1978), § 3. Also, where the will does not specify a fixed purchase price, courts have appointed an appraiser or have held that a price set by appraisal was proper. *See* Jay M. Zitter, Annotation, *Testamentary Option to Buy Real Estate*, 13 A.L.R.4th 947 (1982), § 2(a).

Here, on September 3, 2001, three months after Birdsong's death, counsel for Birdsong's estate informed Drake that the

---

5. Specifically, we do not find that Birdsong's desire for her long-term tenant to have the first opportunity to purchase the Property conflicts with her desire to provide for her daughter.

Property had been appraised at $608,500.00, that the details of the appraisal were available for his review, and that he could purchase the Property for that amount within thirty days. Drake's response was to request an additional sixty days in which to consider purchasing the real estate. His request was granted, and he was given "until December 12, 2001 to complete the purchase" of the Property. (App.172). However, Drake was expressly advised that "his option to do so" would "expire" if he did not act by that date. (App.172). The designated evidence reveals no further response from Drake.

We note that in his letter of March 6, 2002, Drake cited the language of Item V—that he had "the option to purchase [the Property] ... at the time of sale of said real estate"—in support of his position that until there had been successful auction bids, there had been no price determined for him to pay in order to purchase the Property pursuant to the option bequeathed to him. However, the facts show that six months earlier, Drake had been provided a price for the Property—based on a professional appraisal. Drake did not respond to the September 3, 2001, advisement that the Property had been appraised at $608,500.00 by expressing either his disagreement with the price set or the quality of the appraisal; nor did he seek to have his own appraisal made. Rather, he simply sat idly by and waited and waited. "Equity aids the vigilant, not those who sleep on their rights." *Wagner v. Estate of Fox,* 717 N.E.2d 195, 201 (Ind.Ct.App. 1999); *see also SMDfund v. Fort Wayne–Allen County Airport,* 831 N.E.2d 725, 729 (Ind.2005) (courts of equity decline to assist person who has slept upon his rights).

We recently held that when a will bequeathed to individuals the first opportunity to purchase a certain property but did not specify a price or means for determining the price, "the asking price when the property is put on the market could be considered an implicit price term." *Estate of Owen,* 855 N.E.2d 603, 612 (Ind.Ct.App. 2006). It is reasonable to similarly presuppose that the appraised value of the Property would be an appropriate starting price to ask when putting it on the market.

We find the designated facts to establish that three months after the testator's death, Drake was given the opportunity to purchase the Property for a specific appraised value. Pursuant to *Estate of Owen,* 855 N.E.2d at 612, the price for the Property was set at that time—September 3, 2001. Drake neither challenged the price set, nor had his own appraisal made, nor attempted to negotiate for a different price; in other words, he failed to take any action toward making the purchase within the following three months given him to do so. We conclude that by mid-December of 2001, Drake had been given a reasonable time to exercise the bequeathed option to purchase the Property; that he failed to exercise the option or make an effort to exercise the option; and by failing to do so, he waived the right bequeathed to him. Accordingly, the trial court did not err in granting summary judgment to the defendants.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.