

FILED

Apr 05 2023, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael P. Bishop
MaryEllen K. Bishop
John B. Bishop
Cohen Garelick & Glazier
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel Kay Beach,

*Appellant-Respondent,*

v.

Teresa Spiech, Trustee of
the Dauby Family Trust,

*Appellee-Petitioner.*

April 5, 2023

Court of Appeals Case No.
22A-TR-1779

Appeal from the Hamilton
Superior Court

The Honorable Michael A. Casati,
Judge
The Honorable David A. Shaheed,
Senior Judge

Trial Court Cause No.
29D01-2204-TR-207

**Opinion by Judge Weissmann**
Judges May and Crone concur.

**Weissmann, Judge.**

[1]  Upon her death, Carol Daubenspeck wanted her children, Daniel Beach and Teresa Spiech, to receive equal shares of her property. The only exception being Daubenspeck's desire for Beach to receive her home as part of his share if he wished. To accomplish this, Daubenspeck placed her assets within the Dauby Family Trust, named her two children as equal beneficiaries, and gave Beach a right of first refusal "to receive" the home as part of his distribution from the trust. But when Beach chose to exercise his right of first refusal after Daubenspeck's death, Spiech, as successor Trustee, arranged to sell the home to a third-party instead.

[2]  Beach refused to recognize the third-party arrangement, prompting Spiech to docket the Trust and ask the local trial court to force the sale. The trial court found that Beach's right of first refusal only activated upon the receipt of a bona-fide offer from a third-party, meaning Beach must match the terms of the sale or forfeit his right to receive the home. We disagree. Giving full effect to the Trust's language, we find that Beach's right of first refusal gave him the choice to receive the home as part of his share of the Trust if he so desired. Accordingly, we reverse and remand to determine the value of the home at the time of Daubenspeck's death so that the Trust's assets may be divided evenly between the siblings with Beach receiving the home, if possible, as part of his distribution. We affirm the trial court's decision on all other grounds.

## Facts

[3] Daubenspeck created the Trust, in part, to "avoid[] probate or estate administration" and "manage [her] assets in the event of [her] . . . death." Appellant's App. Vol II, p. 13. Much of Daubenspeck's property, including the home, was placed in the Trust, and her two children, Beach and Spiech, were named as the Trust's beneficiaries. While the Trust required distributing the assets equally between Beach and Spiech upon Daubenspeck's death, the Trust also gave Beach a right of first refusal "to receive [the home] as part of his residuary distribution." *Id.* at 26.

[4] While Daubenspeck was alive, she and Beach had an agreement that allowed Beach to live at the home in exchange for performing general maintenance and upkeep on the property. When Daubenspeck passed away in 2020, Beach had been living in the home with his immediate family for several years. Spiech became Trustee upon Daubenspeck's death. Within a few months, Spiech added her husband as Co-Trustee.

[5] Soon after becoming Trustee, Spiech discussed the sale of the home with a realtor. Spiech did not inform Beach of this discussion or notify him of his right of first refusal to the home. Yet even without that knowledge, Beach was generally obstructive of any effort to appraise the home or catalogue the personal property within. He barred appraisers from entering the property more than once and generally thwarted the process to dispose of Trust property.

[6] Six months passed until Beach was given notice of the opportunity to exercise his right of first refusal. In the notice, Spiech demanded that Beach pay her $225,000 for her share of the home, which she valued at $450,000. In reply, Beach sent Spiech a certified letter through counsel stating he intended to exercise his right of first refusal but disputed the value assigned to the home.

[7] Little changed until nearly a year later when the Trust received an offer from Ashley and Dallas Neff to purchase the home for $455,000. Spiech accepted the offer and entered into a purchase agreement requiring Beach to exercise his right of first refusal within three days. When Beach did not comply with the three-day deadline and refused to honor the sale of the home, Spiech docketed the Trust with the trial court to determine the status of Beach's right of first refusal and, if necessary, order Beach to vacate the home. Beach answered by seeking damages and attorney's fees due to Spiech's alleged violation of her fiduciary duties as Trustee.

[8] The trial court heard evidence from the parties over two half-day evidentiary hearings. Although the primary issue revolved around the interpretation of the Trust's right of first refusal provision, a question of law, both parties sought to introduce evidence of the home's value and the behavior of the other party as it related to the Trust. In particular, Spiech argued that Beach had generally obstructed and delayed her work as Trustee by preventing access to the home so that the personal property within could be catalogued and valued. Beach replied in kind, alleging that Spiech had abused her position as Trustee by unreasonably delaying the distribution of the Trust's assets. Each party also

presented their own appraisals of the home, with Spiech's coming in at $387,000 and Beach's at $275,000.

[9] The trial court ruled for Spiech, finding that a right of first refusal is only activated by the receipt of a bona fide third-party offer. Accordingly, the court concluded that Beach must pay the value set by the Neffs' offer to exercise his right of first refusal. The trial court believed Beach's position—that he should receive the home as part of his distribution from the Trust at its value as of Daubenspeck's death—required the court "to ignore legal precedent" on the meaning of a right of first refusal. *Id.* at pp. 240-42. The trial court also determined that Spiech had met her obligations as Trustee and denied Beach's requests for damages and attorney's fees.

## Discussion and Decision

[10] Beach makes three arguments on appeal. First, Beach contends the trial court erred in interpreting the Trust's right of first refusal provision and that he should have been allowed to receive the home at its value at the time of Daubenspeck's death, not the third-party purchase price. Second, Beach argues that the trial court erred in its handling of the evidentiary hearings. And third, he claims the trial court erred in denying his request for attorney's fees and other sanctions for Spiech's conduct as Trustee.

[11] As the trial court here entered findings of fact and conclusions, we apply our common two-step standard of review. We consider first whether the evidence supports the findings and then whether the conclusions support the judgment.

*In re Estate of Owen*, 855 N.E.2d 603, 608 (Ind. Ct. App. 2006). In doing so, we neither reweigh the evidence nor reconsider witness credibility and view the evidence only in the light most favorable to upholding the judgment. *Id.* The trial court's findings and conclusions will be overturned only if the record contains no facts or inferences supporting them. *Id.* In other words, the trial court's judgment must be clearly erroneous. *Id.* Any question of law is reviewed de novo. *Id.*

## I.  Right of First Refusal

Beach believes the trial court erred in its interpretation of the Trust's right of first refusal provision. The section containing this provision reads in full:

> Section 3.10 Right of First Refusal Granted to Daniel Beach
>
> *As soon as practicable after my death*, the Trustee shall notify my son, Daniel Beach in writing, sent by certified mail, return receipt requested, or other verifiable means, of his *right of first refusal to receive* [the home] *as part of his residuary distribution*. If Daniel Beach predeceases me or fails to notify the Trustee in writing of his intention to exercise his right of first refusal within sixty days of receiving notice, this Right of First Refusal shall lapse, and the property shall be distributed in accordance with the articles that follow.
>
> If Daniel Beach does not properly exercise his right, then Teresa Spiech shall have the same option to receive this property as part of her residuary distribution.

Appellant's App. Vol. II, p. 26 (emphasis added).

To Beach, the right of first refusal provision allowed him to receive the home as part of his residuary distribution, so long as he exercised this right within 60 days after receiving notice thereof. But to Spiech and the trial court, the Trust provision merely allowed Beach the first opportunity to buy out Spiech's interest in the property or otherwise match the terms of a third-party offer if the home was put up for sale. We agree with Beach's reading.

[13] The interpretation of trust documents is a matter of law that we review de novo. *Gittings v. Deal*, 109 N.E.3d 963, 971 (Ind. 2018). The guiding principle in interpreting trust documents is to "ascertain and give effect to the settlor's intention." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). A trust document is not ambiguous "merely because [the] parties disagree about a term's meaning." *Id.* "Rather, language is ambiguous only if reasonable people could come to different conclusions as to its meaning." *Id.*

[14] We have no difficulty ascertaining Daubenspeck's intent from the plain language of the Trust. Beach's "right of first refusal *to receive* [the home] *as part of his residuary distribution*" means what it says. Appellant's App. Vol. II, p. 26 (emphasis added). If he chooses, Beach may elect "to receive" the home as part of his share of the Trust's assets. As Spiech is still entitled to half of the Trust assets, the home would necessarily come in lieu of any other property or assets Beach may have received. But so long as Spiech receives her half of the Trust's assets, Beach is entitled to the home upon validly exercising his right of first refusal. The confusion here stemmed from a mistaken understanding of how this right of first refusal operated.

Broadly speaking, a right of first refusal is the "right to preempt another." *Hyperbaric Oxygen Therapy Sys., Inc. v. St. Joseph Med. Ctr. of Ft. Wayne, Inc.*, 683 N.E.2d 243, 245 (Ind. Ct. App. 1997) (internal quotation marks omitted) (quoting 3 Arthur Linton Corbin & Eric Mills Holmes, *Corbin on Contracts* § 11.3 468-69 (rev. ed. 1996)). More narrowly, and as it is typically applied in real property transactions, a right of first refusal is "a dormant set of rights that does not entitle the holder to take any action until receipt of a bona fide offer." *Beiger v. Heritage Corp.v. Est. of Kilbey*, 667 N.E.2d 184, 186 (Ind. Ct. App. 1996). Essentially, it is "the right to meet [the] terms of [a] proposed contract before it is executed." *Hyperbaric Oxygen Sys., Inc.*, 683 N.E.2d at 248 (quoting *Black's Law Dictionary* 1325 (6th ed. 1990)). The trial court erred in trying to shoehorn the Trust's right of first refusal provision into these definitions rather than give effect to the provision's plain meaning.

Indiana courts have interpreted right of first refusal provisions many times, usually in the context of real property transactions. *See, e.g.*, *id*. Yet, neither party points to, nor does our own research reveal, an Indiana case examining a right of first refusal *to receive* real property. This distinction is not purely academic. For example, in *Hyperbaric Oxygen Sys., Inc.*, this Court examined whether any distinctions existed between a "right of first refusal *to purchase*" versus a "right of first refusal *to sell*." *Id*. Although the Court ultimately found no distinction between the two, it raised the possibility that not all rights of first refusal operate the same. We have such an example before us today. The right

of first refusal here, unlike the right in *Hyperbaric Oxygen Sys., Inc.*, does not require a bona-fide offer to activate.

[17] The Trust's purpose is defeated if Beach must match a bona-fide third-party's offer as a condition of exercising Beach's right of first refusal. The Trust provides: "*As soon as practicable* after [Daubenspeck's] death, the Trustee shall notify [Beach]" of his right of first refusal. Appellant's App. Vol. II, p. 26 (emphasis added). Already, this is not a standard right of first refusal. Typical right of first refusal language provides that the right lies dormant until the property is put up for sale or there is some third-party offer. *See, e.g.*, *In re Estate of Owen*, 855 N.E.2d at 607 ("If at any time [the property] shall be placed for sale . . . ."); *Beiger Heritage Corp.*, 667 N.E.2d at 185 ("If . . . at any time [the property's owner] desires or is otherwise compelled . . . to sell, convey, transfer, assign or otherwise dispose of [the property] . . . ."); *McGehee v. Elliot*, 849 N.E.2d 1180, 1187 (Ind. Ct. App. 2006) (" . . . in event [the property] should be for sale at any time in the future"). Given that our guiding principle here is to "ascertain and give effect to the settlor's intention," *Baker*, 843 N.E.2d at 532, the existence of a bona-fide third party offer is superfluous to the right of first refusal's own terms.

[18] The same logic applies to the language giving Beach the right "to receive" the home "as part of his residuary distribution." Appellant's App. Vol. II, p. 26. Again, the typical language of a right of first refusal expressly contemplates the existence of a separate third-party offer. *See, e.g.*, *B&R Oil Co.*, 77 N.E.3d at 826 ("right of first refusal to purchase"); *Hay v. Hay*, 885 N.E.2d 21, 22-23 (Ind. Ct.

App. 2008) ("upon receiving an offer from a third party . . . ."). While Spiech and the trial court were correct in arguing that a right of first refusal typically requires the existence of a bona fide third-party offer, applying that result here ignores the Trust's plain language which requires Beach to be notified of his right upon Daubenspeck's death.

[19] We conclude that the trial court erred in ruling that Beach must match the Neffs' offer before exercising his right of first refusal. Accordingly, we remand to the trial court to assess the value of the home at the time of Daubenspeck's death so that the Trust assets may be evenly divided among the siblings.

## II. Due Process

[20] Beach next argues that the trial court violated his due process rights in setting a schedule for the evidentiary hearing that denied him the opportunity to present three witnesses on the issue of Spiech's alleged breach of her fiduciary duty as Trustee. Although Beach does not phrase his argument in these terms, we understand him as alleging the trial court committed reversible error by denying him his "opportunity to be heard." *See generally Morton v. Ivac*, 898 N.E.2d 1196, 1199 (Ind. 2008). We review this issue de novo. *D.G. v. S.G.*, 82 N.E.3d 342, 347 (Ind. Ct. App. 2017).

[21] Beach was not denied an opportunity to be heard. The record reflects that the trial court not only appropriately conducted the hearings, but that Beach agreed to the very hearing schedule of which he now complains. Several times, the trial court made clear to both parties' counsel that the hearings would not be

extended beyond the second day. Tr. Vol. II, pp. 56-57, 87 ("Well, you gentlemen can invest your time as you see fit but at 4:30 the curtain goes down and the show is over."). Beach did not object to the hearing schedule and conveyed that he understood the time constraints. *Id.* at 57. And although he now alleges that the testimony from his three witnesses would have been "highly relevant," Appellant's Br., p. 28, Beach said to the court at the hearing: "If we don't get to the [three witnesses], that's okay." *Id.* at 62. Given the repeated discussions with both parties about the hearing schedule and Beach's decision to use his given time in ways other than calling the three witnesses, the trial court did not deny Beach his opportunity to be heard. *D.G.*, 82 N.E.3d at 346-47.

## III.  Breach of Trust

[22] Lastly, Beach argues that the trial court erred in declining to award him damages and attorney's fees for Spiech's alleged breach of the Trust and conduct as Trustee. We defer to the trial court's "sound discretion" on these issues. *In re Eiteljorg*, 951 N.E.2d 565, 572 (Ind. Ct. App. 2011). And we find no abuse of that discretion here.

[23] Beach bases his request for damages and attorney's fees on a breach of trust claim against Spiech for not promptly liquidating and dispersing the Trust's assets. There are two problems with this theory. First, as shown above, the Trust's own instructions for dispersing its property were opaque. And while we conclude above that Spiech wrongly interpreted and administered the Trust documents, this mistake does not rise to a level requiring either damages or

attorney's fees because Beach does not show any resulting harm to the Trust. *See Goodwine v. Goodwine*, 819 N.E.2d 824, 828 (Ind. Ct. App. 2004) ("If the trust is not harmed by any breach of trust committed by the trustee, the beneficiaries may not complain of the breach of trust.").

[24] Second, the evidence supports the trial court's determination that Beach's obstructive behavior contributed to the delay. On multiple occasions, Beach resisted or disrupted Spiech's efforts to catalogue and appraise both the personal property within the home and the home itself. As these actions were necessary to accurately distribute the Trust's assets, Beach cannot actively hinder the administration of the Trust with one hand while seeking damages for the inevitable delay that his own actions caused with the other. Accordingly, we affirm the trial court's decision awarding Beach no damages or attorney's fees.

## Conclusion

[25] Finding the trial court erred in its interpretation of the Trust's right of first refusal provision, we reverse and remand to assess the value of the home at the time of Daubenspeck's death so that the Trust assets may be divided between the siblings with Beach receiving the home, if possible, as part of his distribution. The trial court's decision is affirmed on all other grounds.

May, J., and Crone, J., concur.