Steve **CARTER**, Indiana Attorney General, Appellant (Intervening Defendant/Crossclaim Plaintiff/Counterclaim Plaintiff),

v.

**CITY OF EAST CHICAGO**, Indiana, Appellee (Third Party Defendant/Intervening Defendant/Third Party Plaintiff/Counterclaim Plaintiff/Crossclaim Plaintiff),

**East Chicago Second Century, Inc.**, Appellee (Plaintiff/Counterclaim Defendant/Crossclaim Defendant),

**Michael A. Pannos and Thomas S. Cappas**, Appellees (Crossclaim Defendants).

**Rih Acquisitions Inc., LLC**, d/b/a Resorts East Chicago, Appellee (Defendant/Third Party Plaintiff/Counterclaim Plaintiff/Crossclaim Defendant),

**Twin City Education Foundation, Inc., And East Chicago Community Development Foundation, Inc.**, Appellees (Intervening Plaintiffs/Third Party Defendants/Crossclaim Defendants) [1].

No. 49A02–0708–CV–722.

Court of Appeals of Indiana.

March 12, 2008.

---

1. Appellants City of East Chicago, Appellees RIH Acquisitions, Inc., LLC, Twin City Education Foundation, Inc., and East Chicago Community Development Foundation, Inc.,

Steve Carter, Attorney General of Indiana, Thomas M. Fisher, Solicitor General, Heather L. Hagan, Jeffrey R. Cox, Deputy Attorneys General, Patrick L. Baude, Special Deputy Attorney General, of Counsel, Office of the Attorney General, Indianapolis, IN, Attorneys for Appellants.

J. Lee McNeely, Brady J. Rife, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, Attorneys for Appellees: Attorneys for East Chicago Second Century, Inc., Michael A. Pannos and Thomas S. Cappas.

James A. Knauer, William Bock, III, Steven E. Runyan, Kroger, Gardis & Regas, LLP Indianapolis, IN, Attorneys for City of East Chicago.

## OPINION

MAY, Judge.

The Indiana Attorney General appeals the dismissal of its counterclaim and cross-claim for imposition of a constructive trust and an accounting on money paid to East Chicago Second Century pursuant to a riverboat casino license agreement.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In 1994 and 1995, East Chicago and the Showboat Marina Partnership entered into two agreements providing for Showboat's distribution of some of its gaming revenue if it were awarded the license to operate the East Chicago riverboat casino. To secure a riverboat license, the Attorney

are not seeking relief on appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

General asserts, an applicant must show a commitment to local economic development: "pursuant to the Act, securing a riverboat license *requires* an applicant's commitment to local economic development." (Br. of Appellant Attorney General Steve Carter (hereinafter "Attorney General's Br.") at 5), (citing Ind.Code § 4–33–6–7(b)) (emphasis supplied).[2]

East Chicago agreed with Showboat that if East Chicago supported the Showboat application, Showboat would fund economic development with three percent of its future adjusted gross receipts. The East Chicago Common Council passed an ordinance in September 1995 endorsing the Showboat commitments.

Pursuant to the agreement Showboat would pay one percent to each of two nonprofit foundations and one percent to East Chicago. A separate provision of the agreement provided Showboat would form Second Century, a for-profit corporation, and would fund Second Century with .75% of the adjusted gross receipts of its casino operation.

Showboat was awarded the license in April 1997, and the Indiana Gaming Commission incorporated the terms of the agreement as conditions for Showboat's receipt of the license. Showboat made the payments accordingly. In 1999 the license was transferred to Harrah's, with Gaming Commission approval, and Harrah's continued to make the payments called for in the agreement.

In the fall of 2004, RIH Acquisitions, doing business as Resorts East Chicago ("Resorts"), applied to the Gaming Commission for transfer of the Harrah's license to Resorts. Resorts indicated it was willing to continue making the payments. The Gaming Commission granted the license transfer without addressing the agreement.

Second Century sought a declaratory judgment that Resorts would be required to continue the payments to Second Century. The Attorney General intervened and brought its counterclaim and crossclaim seeking imposition of a constructive trust on the money paid to Second Century and its principals. The trial court granted Second Century's motion to dismiss the counterclaim and crossclaim.

## DISCUSSION AND DECISION

■ The Attorney General's authority to bring its counterclaim and crossclaim was premised on its characterization of the Showboat agreement as establishing a "public charitable trust." (Attorney General's Br. at 11.) The agreement[3] did not

2. The Attorney General relies on this subsection, but it does not apply to East Chicago; it applies only to Gary. Section 4–33–6–7(a) provides the Indiana Gaming Commission, in granting a riverboat casino license, "may" give favorable consideration to economically depressed areas of Indiana and to applicants presenting plans that provide for significant economic development over a large geographic area. Subsection (b), on which the Attorney General relies, provides "[t]he commission *must require* the applicant to provide assurances that economic development will occur in the city...." (Emphasis supplied.) But that subsection applies to "any owner's license issued for a city described in section 1(a)(1) of this chapter."

Section 4–33–6–1(a)(1) applies to "a riverboat that operates from the largest city located in the counties described under IC 4–33–1–1(1)," specifically in the case before us "[c]ounties contiguous to Lake Michigan." Gary is the only city in that category.

Accordingly, to the extent the Attorney General's argument is premised on a statutory *requirement* an applicant "provide assurances that economic development will occur in the city," its counterclaim and crossclaim were properly dismissed.

3. It is difficult to determine from the Attorney General's argument the exact nature of the "trust" it asserts. The Attorney General characterizes the *funds* paid pursuant to the

establish such a "charitable trust," and therefore the dismissal of counterclaim and crossclaim was not error.

We note initially the Attorney General's arguments are based on the premise the Second Century funding provision was one of the "economic development contributions," (id. at 6), outlined in the Showboat agreement. The Attorney General asserts the agreement "provided that Showboat, among other things, would make economic development contributions totaling 3.75% [4] of its 'adjusted gross receipts'" if Showboat received the license. (Id.) (footnote added). It goes on to assert: "The Showboat agreement specified that these contributions would be allocated as follows: [one percent to East Chicago, the Twin City Education Foundation, and the East Chicago Community Development Foundation, and .75 percent to Second Century]." (Id.)

This appears to be a mischaracterization of the agreement, as the funding for Second Century is not included in the "economic development contribution" section of the agreement. In Part A of the agreement, titled "Economic Development Contribution," Showboat agreed to "contribute annually to and for the benefit of economic development, education and community development" in an amount equal to three percent of its gross receipts. (App. at 140.) It proposed to distribute one percent to the City, one percent to the Twin City Education Foundation, and one percent to the East Chicago Community Foundation, both of which foundations were nonprofit corporations independent of Showboat. (Id.)

The "economic development contribution" section makes no reference to Second Century. Second Century is first addressed in Part B, titled "East Chicago Second Century, Inc." (Id. at 142.) There, Showboat notes, it has, "in addition to the Contribution described above [in part A]," formed Second Century as a for-profit corporation to assist Showboat as a "catalyst" for economic development in the City. (Id.) (emphasis supplied).

Part B listed some projects in which Second Century would engage, and noted the expenditures by Second Century "will not diminish the amount of the Contribution in any way. Even if a gaming license is not granted, Showboat agrees that Second Century will proceed with the development of the Washington High School site." (Id.) (emphasis supplied).

Therefore, to the extent the Attorney General's argument is based on the premise the Second Century funding was part of the "economic development contributions" called for in the agreement, (Attorney General's Br. at 6), its counterclaim and crossclaim were properly dismissed.

 Nor can the Second Century funding be considered a charitable trust. A "charitable trust" is

Showboat agreements as the "trust." E.g., "These monies constitute a public charitable trust," (Attorney General's Br. at 12), and "The funds paid to Second Century constitute a charitable trust regardless of the status of Second Century," (id. at 17).

We decline the Attorney General's apparent invitation to hold money, by itself, can be a "trust." A trust is a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held. Ind.Code § 30-4-1-1. While money might be one type of property held in a trust, it cannot be the "fiduciary relationship" that is the essence of a trust.

4. The agreement does not so provide. Rather, it provides "Showboat agrees to contribute annually to and for the benefit of economic development, education and community development in the City an amount equal to three (3%) percent of Showboat's adjusted gross receipts[.]" None of that three percent was allocated to Second Century.

a trust in which all the beneficiaries are the general public or organizations, including trusts, corporations, and associations, and that is *organized and operated wholly for* religious, charitable, scientific, public safety testing, literary, or educational purposes. The term does not include charitable remainder trusts, charitable lead trusts, pooled income funds, or any other form of split-interest charitable trust that has at least one (1) noncharitable beneficiary.

Ind.Code § 30–4–1–2(5) (emphasis supplied).

No "public charitable trust" involving Second Century was created by the Showboat agreement, as Second Century's status as a for-profit corporation is inconsistent with the statutory requirement that a charitable trust be one "organized and operated *wholly* for religious, charitable, scientific, public safety testing, literary, or educational purposes."

A private corporation, "whatever its public duties, is organized for private ends and may be presumed to intend to make whatever profit the business will allow."

*Meier v. American Maize–Products Co., Inc.,* 650 N.E.2d 741, 743 (Ind.Ct.App. 1995) (quoting *Springfield Gas and Electric Co. v. Springfield,* 257 U.S. 66, 70, 42 S.Ct. 24, 66 L.Ed. 131 (1921)), *trans. denied.* A for-profit corporation is one "organized for the purpose of making a profit; a business corporation." Black's Law Dictionary 343 (Seventh ed.1999). Second Century therefore could not have been organized and operated "wholly" for charitable purposes.

We accordingly find the Attorney General had no authority to assert its counterclaim and crossclaim against Second Century and its principals, and its claims were properly dismissed.

Affirmed.

RILEY, J., and KIRSCH, J., concur.